Electronically Filed
8/31/2015 9:11:07 AM
Hidalgo County District Clerks
Reviewed By: Priscilla Rivas

CAUSE NO.  C-5149-14-H

| | | |
|---|---|---|
| PHARR SAN JUAN ALAMO | § | IN THE DISTRICT COURT |
| INDEPENDENT SCHOOL DISTRICT | § | |
| *Plaintiff* | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | HIDALGO COUNTY, TEXAS |
| TEXAS DESCON, L.P., DESCON 4S, | § | |
| L.L.C. and ERO INTERNATIONAL, | § | |
| L.L.P. d/b/a ERO ARCHITECTS | § | |
| *Defendants* | § | 389th JUDICIAL DISTRICT |

---

## PLAINTIFF PHARR SAN JUAN ALAMO INDEPENDENT SCHOOL DISTRICT'S FIRST AMENDED DESIGNATION OF EXPERTS

---

COMES NOW, PHARR SAN JUAN ALAMO INDEPENDENT SCHOOL DISTRICT, Plaintiff in the above numbered and styled cause, and tenders its First Amended Designation of Experts in compliance with the July 17, 2015 Agreed Level 3 Docket Control Order deadline for Plaintiff's expert designation and production of expert reports.

(1)    **The expert's name, address, and telephone number**

**Answer:**

Bradford Russell, AIA, P.E.
BR Architects
2007 N. Collins Boulevard, Suite 507
Richardson, Texas 75080
(972) 235-9308

Thomas June Melton, III, P.E.
Amstar Engineering, Inc.
707 River Road
Austin, Texas 78734
(512) 263-3661

Irene B. Thompson
Aguirre & Patterson
3315 N. McColl Road
McAllen, Texas 78501
(956) 686-4532

1

Electronically Filed
8/31/2015 9:11:07 AM
Hidalgo County District Clerks
Reviewed By: Priscilla Rivas

Agustin J. Rodriguez
Project Manager, District Architect
Pharr San Juan Alamo Independent School District
601 E. Kelly, Pharr, Texas 78577
(956) 354-2000

Jesus Ramirez
Ebony Park, Suite B
700 N. Veterans Blvd.
San Juan, Texas 78589
(956) 502-5424
(956) 502-5007 (fax)

The following are not retained experts, but Plaintiff reserves the right to call to testify and
to elicit, by way of cross-examination, opinion testimony, and adverse testimony from the
following potential experts or persons with knowledge of the lawsuit:

Eli R. Ochoa, P.E., AIA
Octavio Cantu
David Delnay
Susan Daniels
Jesus Delgado
ERO International, L.L.P.
d/b/a ERO Architects

Texas Descon, L.P. and Descon 4S, L.L.C.
Employees, agents, and representatives
Claudio S. Velasco, Senior Project Manager
Michael D. Smith, President

Bruce L. Morris, P.E.
Steven A. Frase, P.E.
Rimkus Consulting Group
4801 NW Interstate 410 Loop
Frontage Road
San Antonio, Texas 78229
(210) 647-8400

William Stice, R.E.F.P.
David Tyner
Gerald F. A. Lowe, P.E.
Jeffrey A. Miller, P.E., C.B.C.P.
Terracon Consultants, Inc.
6911 Blanco Road
San Antonio, Texas 78216
(210) 641-2112

2

Electronically Filed
8/31/2015 9:11:07 AM
Hidalgo County District Clerks
Reviewed By: Priscilla Rivas

Frank S. Lam, P.E.
Zach Lindaur
Frank Lam & Associates, Inc.
508 W. 16th Street
Austin, Texas 78701
(512) 476-2717


Katrin Miovski, P.E.
Raba Kistner Consultants, Inc.
800 East Hackberry
McAllen, Texas 78501
(956) 682-5487


Andre G. Garner
Garner Consulting Group
100 Commons Road, Ste. 7-302
Dripping Springs, Texas 78620
(512) 894-0754


Curtis Ardoin
Delta Structural Technology
3601 North Loop 336 West
Conroe, Texas 77304


Kristina D. Hernandez, P.E., C.F.M.
Halff Associates, Inc.
5000 West Military, Ste. 100
McAllen, Texas 78503
(956) 664-1960


MEP Solutions Engineering
Employees, agents and representatives
600 E. Beaumont Avenue
McAllen, Texas 78501
(956) 664-2727


Ricardo Hinojosa, P.E.
Hinojosa Engineering, Inc.
108 Cleo Dawson
Mission, Texas 78572
(956) 581-0143

Electronically Filed
8/31/2015 9:11:07 AM
Hidalgo County District Clerks
Reviewed By: Priscilla Rivas

Jorge D. Perez, P.E.
Perez Consulting Engineers
808 Dallas Avenue
McAllen, Texas 78501
(956) 631-4482

Gary L. Olivares
Accessibility Code Consulting, L.L.C.
1314 Possum Trot
Austin, Texas 78703
(512) 476-8675

Armko Industries, Inc.
Employees, agents and representatives
1320 Spinks Road
Flower Mound, Texas 75028
(972) 874-1388

Jack Holland
Terminix Pest Control
1903 Joe Stephens Blvd.
Weslaco, Texas 78596
(956) 650-0602

Steve Lemmons
Universal Claims Services, Inc.
2004 North Jackson Road
Pharr, Texas 78577
(956) 994-1277

McAllen Carpet & Interiors, L.P.
Employees, agents and representatives
1200 E. Jasmine Avenue
McAllen, Texas 78501
(956) 686-8682

(2)   **The subject matter on which the expert will testify**

**Answer:**

Mr. Russell will testify as to the engineering work performed by the Architect in the design and planning of improvements for the re-adaptive/rehabilitative construction Project which is the basis of this lawsuit, including standards of the profession, omissions and errors committed by the Architect, and proximately

4

Electronically Filed
8/31/2015 9:11:07 AM
Hidalgo County District Clerks
Reviewed By: Priscilla Rivas

resulting damages. Mr. Russell will additionally testify regarding the demolition work performed by the Descon defendants in Phase I of the Project, and generally regarding safe demolition practices.

Mr. Melton will testify as to the engineering work performed by Mr. Eli Ochoa, PE, AIA/ERO International, L.L.P. d/b/a ERO Architects ("Architect") in the design and planning of improvements for the re-adaptive/rehabilitative construction Project which is the basis of this lawsuit. Mr. Melton will testify as to structural engineering issues. Mr. Melton will testify as to the work performed by Mr. Frank S. Lam, P.E. and Frank Lam & Associates, Inc. in the preparation of a structural engineering evaluation for the Architect on the project. Mr. Melton will testify as to the work of Mr. Bruce L. Morris, P.E. and Rimkus Consulting Group, Inc. in evaluating damage at the Project site for Chubb Corporation.

Mr. Melton will additionally testify as to the proximate cause(s) of Plaintiff's damages in Phase I of the Project, as well as calculations of damages.

Ms. Thompson will offer her opinion as a professional appraiser as to the respective values of the Stambaugh building and the textbook storage building.

Mr. Rodriguez will testify regarding reasonable and necessary costs to repair damages sustained at Phase I and Phase II of the Project, based on historical construction costs for public school district construction in South Texas. He will testify as to the specifications of the Stambaugh and Textbook Storage buildings, including square footage, and as to what the original plans for these structures entailed in terms of planned improvements.

Mr. Ramirez will testify as to the reasonableness of Plaintiff's attorney's fees.

(3)   **The general substance of the expert's mental impressions and opinions and a brief summary of the basis of them, or if the expert is not retained by, employed by or otherwise subject to the control of the Plaintiff, documents reflecting such information**

**Answer:**

Architect

Regarding the assessment phase of the Project, Mr. Russell will testify that Architect's work deviated from acceptable standards in the practice of architecture in the following respects:

(i)   Failing to undertake/require reasonable foundation testing (core testing) to determine existence/condition of moisture barrier between foundation and soil;

(ii)  Failing to address lack of moisture barrier in designs;

Electronically Filed
8/31/2015 9:11:07 AM
Hidalgo County District Clerks
Reviewed By: Priscilla Rivas

(iii) Failing to undertake/require reasonable structural testing of structural elements.

Regarding Phase I of the Project, the Architect failed to meet Architect's design responsibilities and specification requirements in a Project calling for partial demolition of structural elements of an existing building in the following respects:

(i)   Failing to consider the impact and risk of structural damage of demolition work in its designs and specifications for the construction project;

(ii)  Failing to request and follow through with the general contractor/demolition contractor to develop a specific plan containing means and methods for the demolition (even though the contract between Owner and Contractor so provided)

(iii) Upon failure of the general contractor to develop a specific plan containing means and methods, permitting the contractor to proceed with demolition.

Mr. Russell will testify that such errors and omissions constituted the proximate cause of Plaintiff's damages, including the collapse of a portion of the East Wall and second story floor in the Main Building and resulting damage to the West Wall and support columns, and other structural damage to the building.

Regarding Phase II of the Project, Mr. Russell will testify that Architect's work deviated from acceptable standards in the practice of architecture in the following respects:

(i)   Failing to conduct reasonable investigation of the conditions of the two buildings (Stambaugh Building and Textbook Storage building) before inducing the district to approve the plans and specifications and award the construction contract;

(ii)  Failing to determine existing conditions of the two buildings rather than relying upon unreasonable assumptions while preparing plans and specifications for rehabilitative/re-adaptive use.

(iii) As chief advisor to the District on design and construction issues, advising the District to proceed on a course of action without having made an adequate evaluation of existing conditions, knowing that the District would necessarily rely upon the Architect's representations.

Mr. Russell will testify that such errors and omissions constituted the proximate cause of Plaintiff's damages in Phase II of the Project. (See attached Expert Report of Mr. Bradford Russell, AIA, PE.)

<u>Descon Defendants</u>

Mr. Russell will testify that the Descon Defendants were negligent in their failure to adequately inspect and test the structures and site beforehand and failure to use appropriate demolition means and methods in Phase I of the Project. Such

Electronically Filed
8/31/2015 9:11:07 AM
Hidalgo County District Clerks
Reviewed By: Priscilla Rivas

negligence proximately resulted in the damages that Plaintiff has complained of in this lawsuit. (See attached Expert Report of Mr. Bradford Russell, AIA, PE.)

### Frank Lam & Associates, Inc.

Mr. Melton will testify that Frank Lam & Associates was negligent in failing to undertake a more thorough investigation and determination of the structural integrity of the existing facilities in preparation for modification and renovation. The report produced by Frank Lam & Associates was based on cursory observations and no exploratory testing was performed to determine the make-up of the exterior walls. Mr. Melton will further testify that Frank Lam & Associates was negligent in not preparing instructional demolition plans and not being on site every day that demolition was taking place to guard against careless actions of the demolition contractor and to ensure that proper and appropriate safeguards were used to prevent damage to portions of the building not scheduled for demolition. (See attached Expert Report of Thomas June Melton, III, P.E.)

### Rimkus Consulting Group, Inc.

Mr. Melton will testify that Rimkus Consulting Group, Inc.'s investigation of the District's damages was arbitrarily narrow in scope, and the resulting report excluded a vast portion of the damage sustained by the District attributable to the collapse of the east wall, including damage to the brick roof parapet, damage resulting from lateral forces traveling east to west through the building, and damage to support columns in the basement. (See attached Expert Report of Thomas June Melton, III, P.E.)

### Damages

Mr. Melton and/or Mr. Russell will testify that the Plaintiff's proper measure of damages regarding Phase I of the Project is the cost of construction repairs resulting from the collapse and resulting damage to the property.

Mr. Melton and/or Mr. Russell will testify that the Plaintiff's proper measure of damages regarding Phase II of the Project would be calculated as follows:

(1)     the actual cost differential in the change orders to the contract to address the wrong assumptions and flawed understanding of actual conditions of the Architect, and

(2)     the pecuniary loss resulting from the loss of use of the comparable square footage of space of the Textbook and Stambaugh buildings which resulted from proceeding to make the improvements to those buildings when new construction of a comparable square footage would have been more efficient.

Electronically Filed
8/31/2015 9:11:07 AM
Hidalgo County District Clerks
Reviewed By: Priscilla Rivas

Ms. Thompson's appraisals of the Stambaugh building and Textbook Storage building will be employed to provide a basis for the calculations referred to above. (See "Appraisal Report of an Existing Educational Building (aka Textbook Building) 714 E. U.S. Business Highway 83, Pharr, Texas 78577" and "Appraisal Report of an Existing Educational Building (aka Stambaugh Building) 714 E. U.S. Business Highway 83, Pharr, Texas 78577.")

Mr. Rodriguez' calculations as to the reasonable and necessary costs to repair the damages sustained by Plaintiff in Phase I and II of the Project, as well as testimony as to specifications of the Stambaugh and Textbook storage buildings will provide a basis for the calculations referred to above.

<u>Attorney Fees</u>

Mr. Jesus Ramirez has formed opinions regarding the reasonableness of the Plaintiff's attorney's fees billed on this case; the opinions are based on a review of the pleadings, evidence, discovery and depositions taken in the case, as well as the case law applicable to the case, and their experience as trial and appellate attorneys.

(4)   **If the expert is retained by, employed by, or otherwise subject to the control of the responding party**

   A.   All documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony

   **Answer:**

   A Bates labeled expert file, comprising all documents reviewed by Plaintiff's experts, is attached. Additionally, expert reports from Mr. Russell, Mr. Melton, and Mr. Rodriguez are attached.

   Mr. Ramirez has reviewed the pleadings and papers on file in this action.

   B.   The expert's resume and bibliography.

   **Answer:**

   Resumes/job descriptions are attached hereto for retained experts.

   The Plaintiff reserves the right to call to testify and hereby designates any timely designated expert witness listed by any other party to this lawsuit. Plaintiff further reserves the right to elicit, by way of cross-examination, opinion testimony, and adverse testimony, from experts and non-expert witnesses designated and called by other parties to this suit. Plaintiff reserves the right to call undesignated rebuttal expert witnesses whose testimony cannot

Electronically Filed
8/31/2015 9:11:07 AM
Hidalgo County District Clerks
Reviewed By: Priscilla Rivas

reasonably be foreseen until the presentation of the evidence in this trial. Plaintiff reserves the right to withdraw the designation of any expert and to aver positively that any such previously designated expert will not be called as a witness at trial, and to re-designate same as a consulting expert, who cannot be called by opposing counsel. Plaintiff hereby designates, as adverse parties, potentially adverse parties, and/or as witnesses associated with adverse parties, all parties to this suit, and all experts designated by any party to this suit, even if the designating party to this suit, even if the designating party is not a party to this suit at the time of trial. In the event a future or present party designates an expert but then is dismissed for any reason from the suit or fails to call any designated expert, Plaintiff reserves the right to designate and/or call any such party or any such previously designated experts by any party. Additionally, Plaintiff reserves any unmentioned rights with regard to experts, pursuant to the Texas Rules of Civil Procedure, the Texas Rules of Civil Evidence, the case law regarding same and the rulings of this Court. Plaintiff reserves the right elicit expert, lay or adverse opinions by way of examinations, cross-examination or other means, whether appropriate, from those witnesses designated by Defendant or any Intervenor who may have knowledge of relevant facts and/or have been designated as expert witnesses. Additionally, Plaintiff hereby reserves the right to call as trial witnesses those individuals designated as persons with knowledge by Defendant or Intervenor in this cause of action. Such information is on file with the court and has been served upon the other parties in this lawsuit. If a business entity is designated as a person with knowledge herein, you may assume that the appropriate custodian of records may testify as a person with knowledge.

Respectfully submitted,

**THE J. RAMIREZ LAW FIRM**
700 North Veterans Blvd., Suite B
San Juan, Texas  78589
Phone: (956) 502-5424
Fax:    (956) 502-5007
Email: jramirez@rg-legal.com

By:_____
     JESUS RAMIREZ
     SBN 16501950
     Email: ramirezbook@gmail.com
     ROBERT SCHELL
     SBN 24007992
     Email: rschell@rg-legal.com
     ATTORNEYS FOR PLAINTIFF
     PHARR SAN JUAN ALAMO ISD

Electronically Filed
8/31/2015 9:11:07 AM
Hidalgo County District Clerks
Reviewed By: Priscilla Rivas

## CERTIFICATE OF SERVICE

I, JESUS RAMIREZ, certify that on the 28th day of August, 2015, a true and correct copy of the foregoing, **PLAINTIFF PHARR SAN JUAN ALAMO INDEPENDENT SCHOOL DISTRICT'S FIRST AMENDED EXPERT DESIGNATION** was mailed on the following counsel of record:

*Via Federal Express No. 7743 9027 3980*
*And Email: dbenjamin@benlawsa.com*
David P. Benjamin
BENJAMIN, VANA, MARTINEZ & BIGGS, LLP
2161 NW Military Highway, Suite 111
San Antonio, Texas 78213

*Via Federal Express No. 7743 9043 2920*
*And Email: mbc@aaplaw.com*
Matthew B. Cano
Sara Whittington May
ALLENSWORTH AND PORTER, L.L.P.
100 Congress Avenue, Suite 700
Austin, Texas 78701

*Via Federal Express No. 7743 9057 6392*
*And Email: sedwards@hudgins-law.com*
Spencer Edwards
THE HUDGINS LAW FIRM
A PROFESSIONAL CORPORATION
24 Greenway Plaza, Suite 2000
Houston, Texas 77046

*Via Federal Express No. 7743 9163 7486*
*And Email: dmedack@heardmedackpc.com*
David W. Medack
James P. Davis
HEARD & MEDACK, L.P.
9494 Southwest Freeway, Suite 700
Houston, Texas 77075

for JESUS RAMIREZ



**ARCHITECTS & ENGINEERS**

**Bradford Russell, AIA, P.E.**
Director of Architecture / Engineering
BR Architects, Inc.

**Education:**

Southern Methodist University, Dallas, Texas
**Currently writing PhD**
University of Texas at Arlington
**Master of Engineering in Civil / Structural Engineering**
Texas Tech University, Lubbock, Texas
**Bachelor of Architecture**, Tau Sigma Delta Honor Society,
**Bachelor of Science in Civil Engineering**, Tau Beta Pi Honor
Society, Chi Epsilon Honor Society

**Professional Registration:**

Registered Architect, State of Texas
Registered Architect, State of Oklahoma
Registered Professional Engineer, State of Texas
Registered Professional Engineer, State of Oklahoma
Certified to practice Structural Engineering by the Structural Engineering
Certification Board (SECB)
Registered Accessibility Specialist
National Council of Architectural Registration Boards (NCARB)
NCARB Seismic Mitigation Monograph
NCEES file holder
NCEES International Registry Certificate holder
LEED Accredited Professional
CalEMA Safety Assessment Program card holder
Texas Department of Insurance - Engineers Appointed to Perform
Windstorm Inspections

**Professional Affiliations:**

Dallas Chapter AIA,
Texas Society of Architects
American Institute of Architects
American Society of Civil Engineers
Structural Engineering Institute
Structural Engineering Association of Texas
US Green Building Council
Greater Dallas Planning Council, Board Member

**Professional Organization Positions:**

Dallas Chapter AIA,
Past Small Firms Committee Chair
Past Construction Industries Affairs Co-Chair

Project Resume
Bradford Russell, AIA, P.E.
BR Architects, Inc.
December 2013
Page 2 of 9

National AIA
Past Executive National SFRT Committee Co-Chair
Past Member Board Knowledge Committee
Past President Dallas Structural Engineering Association of Texas –
SEAoT
Current SEAoT Chair to Structural Engineering Emergency Response
Plan (SEERP)
Current SEAoT / AIA Liaison

**Pending Patent:**

Patent Application No.:       13/969,529
Patent Title:                Load Bearing Structural Assembly
                             A Load Bearing Structural Assembly is created to transfer and absorb
                             loading between parts more evenly and efficiently

**Selected Publications:**

2000        'Columns – Monthly Publication of the Dallas Chapter of American
            Institute of Architects' – The Psychology of Architectural Space,
            December.

2005        'Dallas / Fort Worth Construction News' – Green design, flexible
            environments, enhanced roadways among current trend – editorial
            interview, September.

2006        'Dallas Office & Commercial – Real Estate Magazine' – 'What Next?',
            Issue 4.

2009        'The Structural Engineer – A Publication of the Structural Engineers
            Association of Texas' – Green Materials to Offset Seismic and Other
            Natural Disaster Events, Spring.

2009        'The American Institute of Architects Chicago Chapter – Changing Times
            / Time for Change' – The Use of Green Materials in the Construction of
            Buildings' Structure, September.

2013        'Pre-Cast Manufacturer Association of Texas – yearly membership
            publication' - What happens to the structure when it is created as art?,
            September.

**Litigation Consulting:**

2008-2012   Under contract with TBAE for reviewing and consulting on the
            Architectural and Structural Engineering litigation related issues of
            statutory provisions and rules enforced by the Board. This consulting
            includes competence and/or legal authority of the design professional to
            perform services noted as well as other issues.

Project Resume
Bradford Russell, AIA, P.E.
BR Architects, Inc.
December 2013
Page 3 of 9

2003-2014 .         Various Architectural and Structural Engineering litigation consulting
concerning various inter-discipline issues of practice.  Various
Architectural and Structural Engineering project failure investigations –
various building types.

**Representative Projects (Condensed list):**

**Building Forensic Investigation:**

2005 – 2014     Various multi-story building investigations on elevator failures
(Architectural and Structural) various locations through the southeast /
west – Architectural Investigation and Reporting, and Structural
Engineering Investigation and reporting.

2011            DART retaining wall failure building impact investigation, Irving, Texas –
12,000 sq.ft. building adjacent to DART retaining wall experienced
structural failures in foundation, paving, roof framing, exterior concrete
panels, etc. – Structural Engineering Investigation and Reporting.

2010            Greenville Avenue Historic Building fire damage renovation, Dallas,
Texas – 11,000 sq.ft. building footprint, 3,100 sq.ft. 2nd floor mezzanine,
6,500 sq.ft. roof top mezzanine – Structural Engineering Design and
Documentation - $1,000,000 estimated construction cost.

2007            Robert Lynn Commercial Real Estate Services, Dallas, Texas – 151 Regal
Row – 180,000 sq.ft. warehouse structural forensic investigation –
Structural Engineering Investigation and Reporting.

.2007          WellsREIT / Emcor, Irving, Texas – 6333 N. State Highway 161 –
structural investigation for various building failures including garage
exterior wall joint, exterior retaining wall, exterior panel, etc. – Structural
Engineering Investigation and Reporting.

2007            JP Morgan Chase, Dallas, Texas – 6300 Harry Hines – approximately
30,000 sq.ft. investigation of multi-story building - structural capacity
investigation for increase in floor loading – Structural Engineering
Investigation and Reporting.

**Hotel Design:**

2006            Courtyard by Marriott, Waco, Texas – 4,000 sq. ft. structural remodel -
wood frame, wood truss, wood lateral support – Structural Engineering
Design, Documentation - $350,000 construction cost.

2003            Amerihost Inn Hotel, Gun Barrel City, Texas – 75,000 sq. ft. structural
engineering design, wood frame, steel and wood lateral support, concrete
foundation – Structural Engineering Design, Documentation - $5.8 million
construction cost.

Project Resume
Bradford Russell, AIA, P.E.
BR Architects, Inc.
December 2013
Page 4 of 9

1999        Bradford Home Suites, Dallas, Houston, North Park, Texas – 85,000 sq. ft. to 109,000 sq. ft. structural engineering design, wood frame, post tension parking and foundation – Structural Engineering Design, Documentation - $5.6 million construction cost.

## Commercial Design:

2003        Informatics, Inc., Plano, Texas – 35,000 sq. ft. office / warehouse - tilt up construction, steel joist, and concrete slab on grade – Architectural Design, Production and Management - $2.7 million construction cost.

2003        ESI, Inc., Plano, Texas – 20,000 sq. ft. office / warehouse addition to existing facility - tilt up construction, composite steel beam concrete floor, and concrete slab on grade – Architectural Design, Production and Management - $1.8 million construction cost.

2010        Gold Metal Recyclers, Dallas, Texas – 10,000 sq.ft. office addition into existing metal building, wood, steal, and concrete - Architectural and Structural Engineering Design, Documentation - $0.65 million construction cost.

2010        RTVF, Dallas, Texas – 6,000 sq.ft. footprint with 6,000 sq.ft. 2nd floor office reconstruct, wood, steal, and concrete - Architectural and Structural Engineering Design, Documentation - $0.75 million construction cost.

2005        HSR Plaza Phase II, Carrollton, Texas – 14,000 sq. ft. professional office building, wood, steal, masonry, and structure – Architectural and Structural Engineering Design, Documentation - $1.4 million construction cost.

2014        Modern Forge Texas Office, Hurst, Texas – 5,000 sq.ft. regional manufacturing office building, steel frame, masonry, EIFS, and structure - Architectural and Structural Engineering Design, Documentation - $500 thousand construction cost.

## Industrial Design:

1996        Jupiter 190 Building 4, Dallas, Texas – 200,000 sq. ft. warehouse using tilt up construction, steel joist, and concrete slab on grade – Architectural Design, Production, and Management - $7 million construction cost.

1996        Excel Warehouse, Addison, Texas – 200,000 sq. ft. warehouse using tilt up construction, steel joist, and concrete slab on grade – Architectural Design, Production, and Management - $6.6 million construction cost.

2005        Atlas Copco Office, Garland, Texas – 2,000 sq. ft. addition to drilling assembly areas – steel frame, composite floor 2nd floor, concrete slab on grade 1st floor – Architectural Design, Production, Structural Engineering Design, Production - $500,000 construction cost.

Project Resume
Bradford Russell, AIA, P.E.
BR Architects, Inc.
December 2013
Page 5 of 9

**Retail Design:**

2005    Whitetail Nurseries, Mesquite, Texas – 17,500 sq. ft. flower growing, distribution, and retail – Architectural Design, Production, Structural Engineering Design, Production - $850,000 construction cost.

2004    Family Dollar Retail / Office, Garland, Texas – 9,000 sq. ft. retail / office using CMU load bearing masonry, steel joist, and concrete slab on grade – Architectural Design, Production, and Management, Structural engineering Design, Production, and Mgmt. - $800,000 construction cost.

1999    Walgreen's Retail Store, Plano, Texas – 14,000 sq. ft. retail store with all amenities – steel framing, tilt up walls –Structural Engineering Design, Project Management - $1,200,000 construction cost.

**Entertainment Design:**

2006    Paciugo Ice Cream, Frisco, Texas – 4,000 sq. ft. interior finish out of shell structure, dining, kitchen, rest rooms, and other amenities – Architectural Design, Documentation, Project Management - $400,000 construction cost.

2004    Rick's Kicks Martial Arts Studio, Frisco, Texas – 5,000 sq. ft. martial arts studios, office, video room, and other amenities – stone / brick veneer, wood frame, steel support, wood lateral resistance, concrete foundation - Architectural Design, Production, and Management, Structural engineering Design, Production, and Mgmt. - $550,000 construction cost.

1993    The Ballpark in Arlington, Arlington, Texas – $191 million structure, steel framed, masonry veneer, concrete foundation – Architectural Construction Administration, Structural Engineering revisions during construction.

**Governmental Design:**

2010    Red River Army Blast Booth, Texarkana, Texas – 10,000 sq.ft. blast booth for equipment repair and cleaning – Structural Engineering Design and documentation - $800,000 construction cost.

**Municipal Design:**

2010    City of Richardson Fire Station, Richardson, Texas – 2,500 sq. ft. metal storage building addition to existing fire station – Architectural Design, , Construction Administration, Structural Engineering Design and Documentation - $75,000 construction cost.

2001    Southern Hunt County Community Center, Quinlan, Texas – 9,800 sq. ft. steel framed, masonry exterior - gymnasium, recreation areas, kitchen, and offices – Architectural Design, Production and Management - $880,000 construction cost.

Project Resume
Bradford Russell, AIA, P.E.
BR Architects, Inc.
December 2013
Page 6 of 9

1999        Richardson Senior Citizens Center, Richardson, Texas – 3,000 sq. ft.
addition, 12,000 sq. ft. interior remodel and finish out – Architectural
Design, Management and Construction Administration - $900,000
construction cost.

**LEED Projects (In Progress):**

**Green Projects:**

2008        Fort Hood Family Housing, Fort Hood, Texas – 8,000 sq. ft. Community
Center - single story LEED Silver – Structural Engineering Design,
Production, Construction Administration, LEED Consulting - $1,500,000
estimated construction cost.

2006        McKinney Aero County Airport, McKinney, Texas – 6,300 sq. ft. interior
finish out / remodel of existing county airport into weekend residence /
office – Architectural Design, Production, Construction Administration,
Various Structural Engineering Design and Documentation - $530,000
construction cost.

2006        Colorado Blvd. Residence Remodel / Addition, Dallas, Texas – 5,000
sq. ft. remodel and addition – wood framed, concrete/brick foundation
early 1900's residence design by renowned Louisiana architect –
Architectural Design, Structural Engineering Design, Documentation, and
Management – $630,000 construction cost.

2002        Cristina's Flowers, Plano, Texas – existing home addition / conversion to
10,000 sq. ft. flower distribution and retail – Architectural Design,
Production and Construction Administration - $600,000 construction cost.

**Restaurant Design:**

2007        Pizza Hut - Frisco Soccer & Entertainment Complex, Frisco, Texas –
6,500 sq.ft. dining, kitchen, rest rooms, and other amenities – Project
Management, Structural Engineering Design - $550,000 construction cost.

2003        Cheddars Restaurant, Arlington, Texas – 11,500 sq. ft.
dining, kitchen, office, rest rooms, and other amenities – steel framing,
load bearing CMU, spread and continuous footings, stone veneer - Project
Management, Structural Engineering Design - $1.0 million construction
cost.

Project Resume
Bradford Russell, AIA, P.E.
BR Architects, Inc.
December 2013
Page 7 of 9

1999         Chuckie Cheese Restaurant, Burnsville, Arizona — 11,000 sq. ft. dining, kitchen, office, rest rooms, and other amenities — Project Management, Structural Engineering Design - $1.0 million construction cost.

## Multi-family Design / Management:

2007         TownParc Apartment Complex, Amarillo, Texas — 150 units, 270,000 sq. ft. apartment complex — Structural Construction Management / Observation - $20 million construction cost.

2007         CityParc at Golden Triangle, Fort Worth, Texas — 312 units, 370,000 sq. ft. apartment complex — Structural Construction Management / Observation - $30 million construction cost.

1997         Arbors of Denton Apartment Complex, Denton, Texas — 244 units, 180,000 sq. ft. apartment complex — Architectural Design, Production and Management - $9.8 million construction cost.

1996         Hobby House Apartment Complex, Austin, Texas — 200+ units apartment complex — Architectural Design, Production and Management - $8 million construction cost.

## Religious Design:

2000         Crosspoint Church, McKinney, Texas — 20,405 sq. ft. worship center - classroom space, kitchen, and support spaces with phased master plan — Architectural Design and Construction Administration - $2.5 million construction cost.

2000         Christ United Methodist Church, Plano, Texas — 30,411 sq. ft. classroom education building with support spaces — Architectural Design and Construction Administration - $3.3 million construction cost.

2010         Trinity Presbyterian Church, Plano, Texas — wind storm damage / steeple replacement — Architectural Design, Construction Administration, and Structural Engineering - $50,000 construction cost.

## Educational Design:

2003         K. B. Polk Elementary School, Dallas, Texas — 35,000 sq. ft. classroom / office addition - concrete and masonry construction, steel frame roof, Architectural Design - $3.5 million construction cost.

1998         Brownsville High School, Brownsville, Texas — 70,000 sq. ft. education building - steel frame, CMU non-load bearing walls, concrete foundation — Structural Engineering Design - $6 million construction cost.

Project Resume
Bradford Russell, AIA, P.E.
BR Architects, Inc.
December 2013
Page 8 of 9

**Medical Design:**

2006      Healthy Paws Veterinary Center, Little Elm, Texas – 1,600 sq. ft. veterinary exam rooms and offices to an existing 4,500 sq. ft. veterinary exam room building, wood frame structure – Architectural Design, Documentation, Structural Engineering Design, Documentation, Construction Administration - $250,000 Construction Cost.

1997      Auburn Medical Office Building, Auburn, Washington – 70,000 sq. ft. office building for physicians, reinforced concrete and CMU structure – Structural Engineering Design - $10.5 million construction cost.

1997      Bristol Regional Medical Center, Bristol, TN – 100,000 sq. ft. medical facility remodel, addition – Architect, Construction Administrator - $9.8 million construction cost.

**Interior Remodel / Design:**

2010      Greenfield Foose office remodel, Dallas, Texas – 25,000 sq. ft. building foot print with 6,000 sq.ft. 2nd floor interior remodel of existing metal building space into office space - Architectural Design, Production, and various Structural Engineering - $1,300,000 estimated construction cost.

2007      RoughRiders Merchandise Pavilion, Frisco, Texas – 4,000 sq. ft. interior finish out of existing space into retail space - Architectural Design, Production, and Construction Administration - $340,000 construction cost.

2002      The Centre for Dance, Richardson, Texas – 10,000 sq. ft. interior finish-out of existing office space into dance studio, offices, kitchen, restrooms - Architectural Design, Production and Construction Administration - $300,000 construction cost.

2000      Randstad North America, Farmers Branch, Texas – 4,200 sq. ft. offices, restrooms, conference rooms, interior finish out – Architectural Design and Construction Administration - $180,000 construction cost.

**Exterior Remodel / Design:**

2007      Galleria North, Dallas, Texas – 70,000 sq. ft. floor area exterior veneer redesign – Architectural Design - $1.5 million construction cost.

**Various Unique Architectural & Structural Design:**

2007      Routh Street Wine Cellar, Dallas, Texas – 450 sq. ft. underground wine cellar – Structural Engineering Design, Documentation, and Management - $100,000 construction cost.

Project Resume
Bradford Russell, AIA, P.E.
BR Architects, Inc.
December 2013
Page 9 of 9

2006            Watermark Land Development, Wylie, Texas – 500 ft. – Entry water
                Feature - Structural Engineering Design, Documentation, and
                Management - $800,000 construction cost.

2006            Hilton Tulsa Southern Hills, Tulsa, Oklahoma – 2,500 sq. ft. – pool
                enclosure addition to existing concrete structural frame - Structural
                Engineering Verification, Design and Management - $100,000
                construction cost.

2006            Residential Exercise Pavilion Saudi Arabian Prince, Dallas, Texas – 500
                sq. ft. addition – wood framed structure over concrete foundation built into
                hillside – Architectural Design, Structural Engineering Design,
                Documentation, and Management – $130,000 construction cost.



ARCHITECTS
&ENGINEERS

August 27, 2015:

I.    Negligence of Architect

Having reviewed documents applicable to the rehabilitative and re-adaptive construction Project ("T-STEM"), Phase I and Phase II at Memorial Middle School campus in Pharr, Texas, (list of documents reviewed attached hereto), I note the following:

The Standard of Care of an architect is established by the contract documents between the Owner and Architect, Standards established by authorities, and ordinary degree of skill and care that would be used by other reasonably competent practitioners of the same area under similar circumstances. In this case, the duty of care would be implicitly molded by the fact that the contracts address re-adaptive and rehabilitative work which would involve demolition on a building in which is historic in nature.

**As identified in the AIA Document B141 – 1997 Part 2** for this project, the following excerpts are taken, followed by specific sections, to demonstrate areas where the Standard of Care was not met:

§2.1.1 The Architect shall manage the Architect's services and administer the Project. The Architect shall consult with the Owner, research applicable design criteria, attend Project meetings, communicate with members of the Project team and issue progress reports. The Architect shall coordinate the services provided by the Architect and the Architect's consultants with those services provided by the Owner and the Owner's consultants.

> '...research applicable design criteria... The Architect shall coordinate the services provided by the Architect and the Architect's consultants with those services provided by the Owner and the Owner's consultants.'

§2.3.1 The Architect shall provide a preliminary evaluation of the information furnished by the Owner under this Agreement, Including the Owner's program and schedule requirements and budget for the Cost of the Work, each in terms of the other. The Architect shall review such information to ascertain that it is consistent with the requirements of the Project and shall notify the Owner of any other information or consultant services that may be reasonably needed for the Project.

> 'The Architect shall review such information to ascertain that it is consistent with the requirements of the Project...'

§2.3.3 The Architect shall review the Owner's proposed method of contracting for construction services and shall notify the Owner of anticipated impacts that such method may have on the Owner's program, financial and time requirements, and the scope of the Project.

> '...the Owner of anticipated impacts that such method may have on the Owner's program, financial and time requirements, and the scope of the Project.'

§2.4.4.1 The Architect shall provide Construction Documents based on the approved Design Development Documents and updated budget for the Cost of the Work. The Construction Documents shall set forth in detail the requirements for construction of the Project. The Construction Documents shall Include Drawings and Specifications that establish in detail the quality levels of materials and systems required for the Project.

Architectural Standard of Care
PHARR-SAN JUAN-ALAMO Independent School District
PSJA
Pharr, Texas
Page 2 of 5
August 27, 2015

> '...provide Construction Documents based on the approved Design Development Documents and updated budget for the Cost of the Work. The Construction Documents shall set forth in detail the requirements for construction of the Project. The Construction Documents shall Include Drawings and Specifications that establish in detail the quality levels of materials and systems required for the Project.'

§2.6.2.1 The Architect, as a representative of the Owner, shall visit the site at intervals appropriate to the stage of the Contractor's operations, or as otherwise agreed by the Owner and the Architect in Article 2.8, (1) to become generally familiar with and to keep the Owner informed about the progress and quality of the portion of the Work completed, (2) to endeavor to guard the Owner against defects and deficiencies in the Work, and (3) to determine in general if the Work is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect shall not be required to make exhaustive or continuous on-site Inspections to check the quality or quantity of the Work. The Architect shall neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents.

> '(2) to endeavor to guard the Owner against defects and deficiencies in the Work...'

**As identified in the Secretary of the Interior's Standards for Rehabilitation of Historic Buildings** (reference attachment following), the following excerpts are taken, followed by specific sections, to demonstrate areas where the Standard of Care was not met:

**Protect and Maintain:**

'Although a historic building will usually require more extensive work, an overall evaluation of its physical condition should always begin at this level.'

**Repair:**

'otherwise reinforcing or upgrading them according to recognized preservation methods.'

**Assessment Phase:**

The Architect's work deviated from the Standard Form of Agreement Between Owner and Architect and acceptable standards, as referenced above and set by Standard of Care, in the practice of architecture in the following respects:

(i) Failing to undertake/require reasonable testing to determine existence/condition of moisture barrier between foundation and soil, which was evident in previous reports which Architect requested and had access to;

(ii) Failing to address lack of moisture barrier in designs;

(iii) Failing to undertake/require reasonable structural testing of structural elements.

**BR ARCHITECTS, Inc.**
2007 N. Collins Blvd., Suite 507   •   Richardson, Texas 75080   •   P (972) 235-9308   •   F (972) 235-9388

Architectural Standard of Care
PHARR-SAN JUAN-ALAMO Independent School District
PSJA
Pharr, Texas
Page 3 of 5
August 27, 2015

**Phase 1:**

The Architect's work deviated from the Standard Form of Agreement Between Owner and Architect and acceptable standards, as referenced above and set by Standard of Care, in the practice of architecture in the following respects:

(i) Failing to consider the impact and risk of structural damage of demolition work in its designs and specifications for the construction project;

(ii) Failing to request and follow through with the general contractor/demolition contractor to develop a specific plan containing means and methods for the demolition (even though the contract between Owner and Contractor so provided)

(iii) Upon failure of the general contractor to develop a specific plan containing means and methods, permitting the contractor to proceed with demolition.

In reference to the above noted sections of the AIA B141 and appropriate Guidelines, given the existing condition of the property such errors and omissions constituted the direct, proximate cause of Plaintiff's damages, including the collapse of a portion of the East Wall and second story floor in the Main Building and resulting damage to the West Wall and support columns, and other structural damage to the building.

**Phase II:**

The Architect's work deviated from the Standard Form of Agreement Between Owner and Architect and acceptable standards, as referenced above and set by Standard of Care, in the practice of architecture in the following respects:

(i) Failing to conduct reasonable investigation of the conditions of the two buildings (Stambaugh Building and Textbook Storage building) before inducing the district to approve the plans and specifications and award the construction contract;

(ii) Failing to determine existing conditions of the two buildings rather than relying upon unreasonable assumptions while preparing plans and specifications for rehabilitative/re-adaptive use.

(iii) As chief advisor to the District on design and construction issues, advising the District to proceed on a course of action without having made an adequate evaluation of existing conditions, knowing that the District would necessarily rely upon the Architect's representations.

In reference to the above noted sections of the AIA B141 and appropriate Guidelines, given the existing condition of the property such errors and omissions constituted the direct, proximate cause of Plaintiff's damages in Phase II of the Project.

Architectural Standard of Care
PHARR-SAN JUAN-ALAMO Independent School District
PSJA
Pharr, Texas
Page **4** of **5**
August 27, 2015

## II.    Damages

**Phase I**

As a result of ERO's negligence as discussed, it is my opinion that the following damages to the building resulted:

1. Basement Floor: the district was required to replace the initial flooring at an estimated net cost to the district of approximately $60,000. I have relied on the measurements and calculations contained in Agustin Rodriguez's report.
2. The remainder of the damages in Phase I attributable collectively and in part to the architect's, the structural engineers and the contractor's negligence which we have identified so far are represented by the following change directives and change orders as set forth in Mr. T. June Melton III's report.

Given that these changes were for the most part changes, fixes or additions to the structural elements, I have deferred to Mr. Melton to address those changes and resulting damages from a structural engineer's perspective.

**Phase II**

As I have indicated in this report, the District was entitled to a more thorough assessment of the conditions of the Stambaugh and Textbook buildings before the architectural designs were completed. Failure of that assessment and investigation resulted in the failure of the assumptions which the Architect made. I have not addressed the difference in cost to the District of the construction work at two buildings based on the Architect's initial plans and those resulting from the change orders. I have reviewed the reports of Mr. Agustin Rodriguez and the appraisals of Irene Thompson and have had discussions with Mr. Rodriguez regarding both his report and Ms. Thompson appraisals. It is my opinion that the methods used by both of them to arrive at their conclusions of cost and value are reasonable.

Mr. Rodriguez's report provides the square footage costs for five new buildings of a similar nature constructed by the District. In each case, the cost per square foot was less than the per square foot cost of the Stambaugh and Textbook buildings. The result of the added cost to the District resulted from changes that were never anticipated by the Architect during the design. The result was that the district ended losing the use of two buildings which were readapted at a cost which would have allowed for the construction of a new building.

It is my opinion that the fair market value of the two buildings is a reasonable damages model that indicates the probable loss to the District.

See report of Mr. Agustin Rodriguez and appraisal reports from Aguirre & Patterson, pertinent results summarized below:

Architectural Standard of Care
PHARR-SAN JUAN-ALAMO Independent School District
PSJA
Pharr, Texas
Page **5** of **5**
August 27, 2015

**High School Construction Cost Phase I:**

Review of construction cost as reflected in the following documents revealed the following opinion of the costs shown:

**Research by Mr. Agustin Rodriguez:**

| | |
|---|---|
| Phase 1 - Basement Cork Flooring: | $14.13 / sq.ft. ($60,985.08) |
| Phase II - Textbook and Stambaugh Buildings: | $193.35 / sq.ft. |

**Appraisal Report prepared by Aguirre & Patterson Inc.:**

| | |
|---|---|
| Phase II – Stambaugh Building: | $353,000.00 |
| Phase II – Textbook Building: | $430,000.00 |

### III. Negligence of Descon Defendants

There are certain standards and safety protocols applicable to construction projects that involve demolition. Additional circumstances, including the structural integrity of a building and its age, could impose an additional duty of care on the demolition contractor to take affirmative action to avoid damage to portions of the building not scheduled for demolition and other collateral damage.

It is my opinion that, given the age and structural integrity of the building, the demolition contractor was negligent in the following respects:

1. Failure to inspect and test the structure before proceeding with demolition;

2. Failure to develop a demolition plan;

3. Failure to seek review and approval of demolition procedures by the Architect and structural engineer;

4. Using unsafe and impractical methods of demolition, including failure to provide support to portions of the structure not designated for demolition.

Respectfully,

Bradford Russell, AIA, P.E., SECB
Architect / Structural Engineer / LEED AP
Director of Architecture / Engineering
BR Architects & Engineers



8/28/15



Technical Preservation Services

# Guidelines



HOME

Standards
Guidelines

Masonry
Wood
Metals
Roofs
Windows
Entrances/Porches
Storefronts
Structural Systems
Spaces/Features/Finishes
Mechanical Systems
Site
Setting
Energy
New Additions
Accessibility
Health/Safety

## Guidelines for Rehabilitating Historic Buildings
## Introduction to the Guidelines

The **Guidelines for Rehabilitating Historic Buildings** were initially developed in 1977 to help property owners, developers, and Federal managers apply the Secretary of the Interior's **Standards for Rehabilitation** during the project planning stage by providing general design and technical recommendations. Unlike the Standards, the Guidelines are not codified as program requirements.

Together with the Standards for Rehabilitation they provide a model process for owners, developers, and Federal agency managers to follow.

The Guidelines are intended to assist in applying the Standards to projects generally; consequently, they are not meant to give case-specific advice or address exceptions or rare instances. For example, they cannot tell owners or developers which features of their own historic building are important in defining the historic character and must be preserved--although examples are provided in each section--or which features could be altered, if necessary, for the new use. This kind of careful case-by-case decision-making is best accomplished by seeking assistance from qualified historic preservation professionals in the planning stage of the project. Such professionals include architects, architectural historians, historians, archeologists, and others who are skilled in the preservation, rehabilitation, and restoration of the historic properties.

**Those approaches, treatments, and techniques that are consistent with the Secretary of the Interior's Standards for Rehabilitation are listed under the "Recommended" section in each topic area**

The Guidelines pertain to historic buildings of all sizes, materials, occupancy, and construction types; and apply to interior and exterior work as well as new exterior additions. Those approaches, treatments, and techniques that are consistent with the Secretary of the Interior's "Standards for Rehabilitation" are listed in bold-face type under the "

Recommended" section in each topic area; those approaches, treatments, and techniques which could adversely affect a building's historic character are listed in the "Not Recommended" section in each topic area.

To provide clear and consistent guidance for owners, developers, and Federal agency managers to follow, the "Recommended" courses of action in each section are listed in order of historic preservation concerns so that a rehabilitation project may be successfully planned and completed--one that, first, assures the preservation of a building's important or "character-defining" architectural materials and features and, second, makes possible an efficient contemporary use. Rehabilitation guidance in each section begins with protection and maintenance, that work which should be maximized in every

project to enhance overall preservation goals. Next, where some deterioration is present, repair of the building's historic materials and features is recommended. Finally, when deterioration is so extensive that repair is not possible, the most problematic area of work is considered: replacement of historic materials and features with new materials.

To further guide the owner and developer in planning a successful rehabilitation project, those complex design issues dealing with new use requirements such as alterations and additions are highlighted at the end of each section to underscore the need for particular sensitivity in these areas.

## How to Use The Guidelines



### Identify, Retain, and Preserve
The guidance that is basic to the treatment of all historic buildings--*identifying, retaining, and preserving* the form and detailing of thos architectural materials and features that are important in defining the historic character--is always listed first in the "Recommended" area. The parallel "Not Recommended" area lists the types of actions that are most apt to cause the diminution or even loss of the buildings's historic character. It should be remembered, however, that such loss of character is just as often caused by the cumulative effect of a series of actions that would seem to be minor interventions. Thus, the guidance in *all* of the "Not Recommended" areas must be viewed in that larger context, e.g., for the total impact on a historic building.

---

### Protect and Maintain
After identifying those materials and features that are important and must be retained in the process of rehabilitation work, then *protecting and maintaining* them are addressed. Protection generally involves the least degree of intervention and is preparatory to other work. For example, protection includes the maintenance of historic material through treatments such as rust removal, caulking, limited paint removal, and re-application of protective coating; the cyclical cleaning of roof gutter systems; or installation of fencing, protective plywood, alarm systems and other temporary protective measures. Although a historic building will usually require more extensive work, an overall evaluation of its physical condition should always begin at this level.

**The parallel "Not Recommended" area lists the types of actions that are most apt to cause the diminution or even loss of the buildings's historic character.**

---

### Repair
Next, when the physical condition of character-defining materials and features warrants additional work *repairing* is recommended. Guidance for the repair of historic materials such as masonry, wood, and architectural metals again begins with the least degree of intervention possible such as patching, piecing-in, splicing, consolidating, or otherwise reinforcing or upgrading them according to recognized preservation methods. Repairing also includes the limited replacement in kind--or with compatible substitute material--of extensively deteriorated or missing parts of features when there are surviving prototypes (for example, brackets, dentils, steps, plaster, or portions of slate or tile roofing). Although using the same kind of material is always the preferred option, substitute material is acceptable if the form and design as well as the

substitute material itself convey the visual appearance of the remaining parts of the feature and finish.

## Replace

Following repair in the hierarchy, guidance is provided for *replacing* an entire character-defining feature with new material because the level of deterioration or damage of materials precludes repair (for example, an exterior cornice; an interior staircase; or a complete porch or storefront). If the essential form and detailing are still evident so that the physical evidence can be used to re-establish the feature as an integral part of the rehabilitation project,



**GATE HINGES AND FASTS.**
To Swing Both Ways, and Self-Shutting.

then its replacement is appropriate. Like the guidance for repair, the preferred option is always replacement of the entire feature in kind, that is, with the same material. Because this approach may not always be technically or economically feasible, provisions are made to consider the use of a compatible substitute material.

It should be noted that, while the National Park Service guidelines recommend the replacement of an entire character-defining feature under certain well-defined circumstances, they never recommend removal and replacement with new material of a feature that--although damaged or deteriorated--could reasonably be repaired and thus preserved.

## Design for Missing Historic Features

When an entire interior or exterior feature is missing (for example, an entrance, or cast iron facade; or a principal staircase), it no longer plays a role in physically defining the historic character of the building unless it can be accurately recovered in form and detailing through the process of carefully documenting the historical appearance. Where an important architectural feature is missing, its recovery is always recommended in the guidelines as the




**GATE FASTENINGS**

*first* or preferred, course of action. Thus, if adequate historical, pictorial, and physical documentation exists so that the feature may be accurately reproduced, and if it is desirable to re-establish the feature as part of the building's historical appearance, then designing and constructing a new feature based on such information is appropriate. However, a second acceptable option for the replacement feature is a new design that is compatible with the remaining character-defining features of the historic building. The new design should always take into account the size, scale, and material of the historic building itself and, most importantly, should be clearly differentiated so that a false historical appearance is not created.

## Alterations/Additions to Historic Buildings

Some exterior and interior alterations to historic building are generally needed

to assure its continued use, but it is most important that such alterations do not radically change, obscure, or destroy character-defining spaces, materials, features, or finishes.



Alterations may include providing additional parking space on an existing historic building site; cutting new entrances or windows on secondary elevations; inserting an additional floor; installing an entirely new mechanical system; or creating an atrium or light well. Alteration may also include the selective removal of buildings or other features of the environment or building site that are intrusive and therefore detract from the overall historic character.

The construction of an exterior addition to a historic building may seem to be essential for the new use, but it is emphasized in the guidelines that such new additions should be avoided, if possible, and considered only after it is determined that those needs cannot be met by altering secondary, i.e., non character-defining interior spaces. If, after a thorough evaluation of interior solutions, an exterior addition is still judged to be the only viable alterative, it should be designed and constructed to be clearly differentiated from the historic building and so that the character-defining features are not radically changed, obscured, damaged, or destroyed.

Additions to historic buildings are referenced within specific sections of the guidelines such as Site, Roof, Structural Systems, etc., but are also considered in more detail in a separate section, New Additions to Historic Buildings.

## Energy Efficiency/Accessibility Considerations/Health and Safety Considerations

These sections of the rehabilitation guidance address work done to meet accessibility requirements and health and safety code requirements; or retrofitting measures to conserve energy. Although this work is quite often an important aspect of rehabilitation projects, it is usually not a part of the overall process of protecting or repairing character-defining features; rather, such work is assessed for its potential negative impact on the building's historic character. For this reason, particular care must be taken not to radically change, obscure, damage, or destroy character-defining materials or features in the process of rehabilitation work to meet code and energy requirements.

**Home | Next | Previous**

**AMSTAR ENGINEERING, INC.**
Structural/Civil Consultants
707 River Road
Austin, Texas 78734
(512) 263-3661
Fax (512) 607-6641

Registered Professional Engineers
Texas   Oklahoma   Arizona
Louisiana   Georgia   Colorado
Mississippi   Utah   North Carolina
Kentucky   Alabama   Arkansas
Texas Firm F-1975

THOMAS JUNE MELTON, III
Licensed Professional Engineer
October 19, 2013

STATES OF REGISTRATION:
Texas
Georgia
Mississippi
Oklahoma
Arizona
Colorado
Utah
Louisiana
North Carolina
Kentucky
Alabama
Arkansas

STATE DISCIPLINES
Structural Engineering
Civil Engineering
Architectural Engineering – Structural, Civil, Building Design, HVAC, Plumbing Engineering

FEDERAL CERTIFICATION
Department of Defense Nuclear Fallout Shelter Analyst 511-1609-68

EDUCATION:
New Mexico Military Institute   9/58-5/60   HS Diploma 5/60
University of Texas, Austin   9/60-1/65   BS ArE 1/65
University of Texas, Austin   1/65-8/66   MS ArE 8/66

EMPLOYMENT HISTORY:

10/88 to present - President, Amstar Engineering, Inc.; Austin, Texas.  CEO of architectural/structural/civil engineering design firm engaged in commercial, industrial and residential building and site design, general consulting, inspections, and forensic analysis and determinations for owners, architects, engineers, contractors and property managers.

8/85 - 10/88 - Travis Associates, Consulting Engineers, Austin, Texas; Structural and civil engineering project design engineer.  Projects included structural design of office buildings, apartments, sewage treatment plants and courthouse modifications.  Structural investigative and repair analysis included apartments, houses, office buildings and government facility.  Civil engineering design included roads, drainage, wastewater collection and disposal facilities for various developments.

9/84 - 8/85 - Capital Erectors, Austin, Texas; Vice president and CEO of newly-formed steel erection company.  Duties included structural analysis of complex steel erection procedures,

1

general administration, contract negotiation, personnel control, field coordination, inspection and safety evaluations.

11/82 - 3/84 - DalMac Development Company, Dallas, Texas; Vice President and CEO of DalMac Residential Development Corporation in charge of acquiring developable land for apartment and condominium projects in the Dallas area. Responsibilities included general administration, contract negotiation, civil engineering analysis of proposed land acquisitions, and structural engineering evaluation of existing apartments and condominiums proposed for acquisition.

9/75 - 9/84 - President; T. J. Melton, III & Associates, Inc., Midland, Texas, a civil/structural build/design firm. Structural engineering projects included Westgate Business Park (offices and warehouses), medical facilities, oilfield structures, insurance offices, retail centers, hotels, schools, churches and large residences. Civil engineering projects included Westgate Acres roads, utilities and drainage, and a large water-recreation park. Company closed in 1984 due to overall decline in oil- related Texas economy. Worked full time from 9/75 to 11/82; part- time from 11/82 to 3/84, and full time from 3/84 to 9/84.

9/73 - 9/75 - Project engineer; Bryant-Curington, Consulting Engineers; Austin, TX; Project design engineer for expansion to Davis Water Treatment Plant; preliminary studies of Onion Creek Sewage Treatment Plant; and various subdivision road, bridge and drainage projects. Responsibilities included structural design of clarifiers, filtration, chemical buildings and laboratories, and associated civil design of road access, parking and drainage facilities.

5/70 - 9/73 - Greeven & Stoeltje, Consulting Engineers; Austin, TX; Project structural design engineer for various projects including elementary schools at Braker Lane, Rundburg Lane and Austin High School; Water Resources State Office Building, Travis County Courthouse Annex and Parking Garage, University of Texas Regents Building, various University of Texas buildings, smaller office and retail buildings, and University of Texas of the Permian Basin. Responsibilities included full scale design, coordination of drafting and some project inspection. Developed computer software for building analysis. Buildings varied in size from single story to twelve-story structures.

9/68 - 5/70 - Structural Engineer; Eugene Wukasch & Associates; Austin, TX; Design engineer in charge of working drawing preparation, coordination between various design professionals, field inspection and client negotiation for various buildings, including retail facilities, apartments, churches, mobile homes, mobile schools and various projects for the Corps of Engineers. Military projects included aircraft hangars and offices, commissary expansion and WAC barracks at Ft. Sam Houston and Brooks AFB.

10/67 - 9/68 - Associate Engineer; Fluor Corporation, Houston, TX; Project engineer in charge of structural design of petrochemical facilities, including buildings, pipe support structures and foundations, and civil design of drainage, pavement and wastewater collection and disposal. Responsibilities included directing a team of engineers involved in specialized design of steel and concrete tower structures for wind and earthquake loadings. Clients included Texaco and Petrotex Petroleum Company. Most projects exceeded $5 million in construction value.

8/66 - 10/67 - Structural Designer; Brown & Root, Inc., Houston, TX. Design engineer of domestic, foreign and offshore facilities including docks, warehouses, petroleum facilities, drilling platforms, and government buildings. Much of the design work performed during this period encompassed numerous smaller components of larger structures, such as specialized design of concrete retaining walls, column and composite beam design, buckling and fatigue analysis of structures subjected to impact from floating vessels and ice flows, and specialized steel connection design. Most projects were undertaken in a team-effort atmosphere. Clients included Geigy Chemical Company and Nakoosa Edwards Company.

2

1/65 - 8/66 - Student; University of Texas; Austin, TX; Working toward Master of Science degree in Architectural Engineering. Worked as a teaching assistant in the Department of Drafting.

8/83 - 9/83 - Structural Draftsman; Preston M. Geren, Architect-Engineer; Ft. Worth, TX; Duties included structural drafting and minor engineering calculations. Projects included various office buildings and high schools. Structural experience included elementary steel connection and base plate design, concrete footings; concrete slab on grade; suspended concrete channel floor systems; and masonry load bearing wall analysis. Other duties included coordination between structural and architectural departments and checking of shop drawings for various projects.

6/61 - 8/61 - Rodman; Texas Highway Department; Midland, TX; Surveyor duties, including quantity takeoffs and measurements; soil tests; surveyor calculations and duties.

9/60 - 1/65 - Student; University of Texas; Austin, TX; Working toward Bachelor of Science degree in Architectural Engineering.


PROFESSIONAL MEMBERSHIPS:

American Institute of Steel Construction
American Concrete Institute - Previous
National Council of Engineering Examiners
Texas Society of Professional Engineers
National Society of Professional Engineers
American Society of Civil Engineers

Past Memberships:
Chairman - Building Code Review Committee - Midland
Chairman - Planning & Zoning Committee - Midland
Planning & Zoning Commission - Midland
Utility Windowpane Advisory Committee - Midland

PUBLICATIONS:
Melton - "Structures Video Seminar" 1988 thru 1997.
Melton - "When the Bough Breaks: Building Failures and the Structural
    Engineering Expert" - 1989; workbook revised 1996.
Melton - "Failures of In-Service MPC Parallel Chord Wood Floor Truss Components
    Reveal Deficiencies in ANSI/TPI Standards - 2000
Melton - "ADA-A/E Title III Design Video Seminar", 1994.

THOMAS JUNE MELTON, III PARTIAL PROJECT LISTING
INCLUDING AMSTAR ENGINEERING PROJECTS
(Significant projects listed only)

The following partial listing reflects the types of projects
for which Thomas June Melton, III has provided engineering
services:

FOR AMSTAR ENGINEERING:

A-1 Fire & Security Foundation / Drainage Evaluation – Waco
A-1 Rental Store - Austin
Academy Surplus Foundation/Tiltwall/Framing - Austin
6903 Agave Cv. Plumbing/Structural – Austin
Aircraft Scaffolding - San Antonio
Airport Marriott Mezzanine - Austin
Alamo Business Center/City Park Buried Utilities Investigations - San Antonio
American Freight Drainage Analysis / Drainage Utilities - Schertz, TX
824 Angel Light – Lake Travis
Applehead Cove Repairs - Horseshoe Bay, TX
Applied Materials - Austin
Architectural Metals (Thresholds) Copyright Dispute - Houston
14731 Arrowhead – Lake Travis, TX
Austin/Bergstrom Airport Pedestrian Bridges - Austin
32 Autumn Oaks Dr. Roof Framing/Water Damage/Repair – Hills of Lakeway
AVAI Boat Dock - Austin
Baby Acapulco Restaurant Addn. - Austin
Balcones Club Apartments Investigation - Austin
Bank United - Austin
Beaumont Federal Correctional Complex - Beaumont, Tx
#11 Beecher St. Structural Repairs - Austin
Bell Towers Drainage/Parking - Austin
2315 W. Ben White Medical Facility Evaluation - Austin
4311 Bennedict Flood Damage/Drainage Investigation - Austin
Best Western Hotel Stucco / Water Intrusion - Austin
12432 Beverly Village Ct. #6 Wind Bracing / Framing Repairs - Austin
Bingle Road Shopping Center Investigation - Houston
5325 Texas Bluebell Window Leakage/Site Drainage - Spicewood, TX
Boeing Building 3238L - Austin
Bois-Du-Lac Condominiums - Dallas
505 Bolivar Framing / Connectors / Flood Plane – Bellaire, TX
7804 Brightman Lane Structural/Truss/Water Penetration – Austin
4805 Brook Creek Cove Foundation Investigation - Austin
Brookstone Apartments Third Floor Walkway Removal – Austin
Bridge Partial Collapse Inv. - Hwy 518, Shreveport, LA
603 Bull Creek Stabilization – Austin
1441 Bull Horn Loop Foundation/Drainage – Round Rock
Bullock, Sandra, 2801 River Hills Road Multi-Damage Investigation - Austin
4600 Bunny Run Structure – Austin
7304 Burnet Rd Fire Damage Investigation - Austin
Butterfield I & II Investigation - San Angelo
1109 C&D 15 1/2 St. Structural / Foundation / Drainage - Houston
Camino Real Apartments Canopy/Structure/Hazards – Austin

4

4300 Canoas Roof Framing - Austin
2400 Canoas Drive Structure - Austin
240 Canterbury Truss/Beam Deficiencies – Dripping Springs, TX
221 Canyon Trail Swimming Pool Analysis – Austin
CAP Water Treatment Plant - Tucson, AZ
Capital Metro Bus Parking/Retaining Walls/Flood Study - Austin
Capital Metro Maintenance Building Drainage/Structural Addition - Austin
Cardinal Hills Unit 7 Wastewater Study - Travis County
Casa Grande Hwy. Flood Relief & Bridge Rail - Phoenix, AZ
3408 Cascadara Drainage/Structural - Austin
Cathelena's Restaurant Structural/Septic - Cedar Park
220 Cedar Hurst Lane Chair Lift Analysis – Lake Travis
11094 Cedar Park Drainage/Structural - San Antonio
Cedar Park Community/Recreational Center Stairs and Rails – Cedar Park
2725 Cedar Springs Framing/Foundation/Drainage/Moisture Investigation – Round Rock
2714 Cedar Springs Framing/Foundation/Drainage/Moisture Investigation – Round Rock
Centercourt Drainage – Austin
Centex Retaining Wall Collapse Inv. Rivermist/Waller Ranch - San Antonio
Chainsaw Massacre Movie Set Structural Analysis – Austin
8400 Chalk Knoll Foundation/Pool Investigation – Austin
8904 Chalk Knoll Drive Fireplace/Chimney/Water Intrusion Inspection – Austin
25938 Chapman Falls Foundation / Drainage Inv. - Richmond, TX
Chase Apartments Roof / Structural / Moisture Assessment - Austin
City-County Jail - Oklahoma City, OK
City National Bank - Austin
City Park Recreation Building - San Marcos
9403 Clearrock Additions - Austin
Cole Baptist Church Roof Truss Failure/Injury – Duncanville
College House CoOp Rehab - Austin
College Park Shopping Center - Killeen
Colorado Building Improvements - Austin
Commadore Riverboat Hull Repairs - Austin
111 Congress Sign - Austin
Congress Ave. Mini Storage Fire Damage Investigation – Austin
Continental Construction Casino Delay Damages Evaluation – Alabama
Convenience Store Canopy - Fredricksburg
2208 Conway Cove Framing Assessment – Pflugerville
Copperas Cove Jr. High Connections - Copperas Cove
225 Corinthian Swimming Pool/Septic System Investigation - Lakeway
Cornett Roof Truss Failure/Injury – Austin
Corridor Park 6 - Cort Furniture - Austin
2150 Cottonwood Creek Foundation/Pool Assessment - Austin
Coulver Rd. Septic Systems - Austin
617 Coventry Residential Design - Austin
Crane Manbasket - Austin
2905 Creeks Edge Parkway Masonry Repairs - Austin
911 Cross Wind Investigation - Austin
Crossland Economy Studio - Austin
Cypress Semiconductor Improvements - Austin
DART City Place - Dallas
DART Improvements - Dallas
Days Inn - Diamond Bar, CA
Dean Witter Sign - Austin
9212 Decker Lane Site Damage Assessment – Austin
Deeb Wood Truss Defect Investigation - WV
Delatte Mobile Home Moisture Intrusion/Structural/Ventilation/Plumbing - Louisiana

5

Denver Pavillions Shopping Center - Denver, CO
Department of Economic Security West - Phoenix, AZ
Dittmar Lumber Warehouse - San Antonio
Doss Road Wastewater System - Travis County
12606 Dover Drive, Montgomery, TX (Chapman)
Downtown Triparty Bridge - San Antonio
Duska Swimming Pool - Austin
Dutchman's Market Freezer Building Investigation - Fredericksburg
Duval County Courthouse Water Intrusion/Superstructure/Civil – San Diego, TX
421 East 6th ADA Issue - Austin
805 East 32nd St. Medical Offices Foundation/Plumbing - Austin
#13 Ehrlich Pool/Retaining Wall Repairs - Austin
Educare Housing - Austin
Eisley Library Door Accident – Lincoln, NE
El Monterrey Apartment Foundation Investigation - Austin
Engineering ethics opinion letter (confidential)
Encycle Texas Plant Dismantle Investigation - Corpus Christi
2408 Enfield Waterproofing and Drainage Investigation - Austin
Entertainment & Sports Arena - Raleigh, N.C.
Escala Apartments - Retaining Wall Failure / Drainage - Austin
Esther's Follies Expansion - Austin
12210 Fairhaven Foundation / Drainage Inv. - Montgomery, TX
Far West Skyline Condomium Rehab - Austin
101 Fawn Meadow Repairs – Austin
101 Fawn Hollow Bracing, Windows, Foundation Issues – Dripping Springs, TX
FDNS Medical Building Thermal Barrier / Vinyl Materials Investigation - New Braunfels
FDNS Medical Building Thermal Barrier / Vinyl Materials Investigation - Seguin
101 Firebird Pool/Wall – Austin
121 Firebird St. – Roof repairs – Lakeway, TX
Flamingo Cantina Canopy & Mezzanine - Austin
Fleetwood Subdivision - Memorial Dr.Flood / Water Barrier Drainage Investigation - Houston
Flower Mound High School Lewisville ISD Water Discharge – Flower Mound, TX
Forest Creek Aerial Crossing - Pflugerville
Forest Creek Retaining Wall/Culverts - Pflugerville
Forest Oaks Wastewater Wetwell - Cedar Park
Ft. Bliss Hangar Door Investigation - El Paso
304 W. 4th St - Austin
807 E. 14th St. Condo Building Water Penetration/ Structural - Austin
Foundation/Superstructure Analysis - Primary School - Eagle Lake
Foundation Analysis 11620 Loweswater - Austin
509-521 Franklin Investigation - Waco
2800 French Place Drainage/Structural Investigation - Austin
Fresno Federal Courthouse Structural Assessment – Fresno, CA
Fruit-O-Loom Slip/Fall Investigation - Harlingen, TX
Fulkes Middle School Beam Connections - Round Rock
Gables at Barton Creek Column Repair – Austin
Galleria Oaks Shopping Center Investigation - San Antonio
4205 Gattis School Road Pavement Assessment – Round Rock, TX
11901 Gateway Swimming Pool/Flooding/Drainage - Austin
General Mail Facility - Bryan
General Telephone & Electric - Irving
Georgetown Jet Addition - Georgetown, TX
42 Governors Court Structural/Fire Inspection – Austin
Grace Lutheran Church - Wimberly
Grand Casino - Tunica, MS.
Grand Casino Hotel Structures - Biloxi, MS

6

9714 Grand Oaks Low Speed Car Crash - Structural Damage - Austin
Granite Quarry Plant Warehouse - Austin
Grapevine Market - Austin
Greathouse Elementary Platforms - Midland
Greatland Office Park Improvements - San Antonio
Hackberry Convenience Store Canopy - San Antonio
Habitat Village Investigation - Austin
Harbor Circle Swimming Pool Investigation - Georgetown
Harthan House Apartments (Historic) – Stabilization and Restructure – Austin
Hartman Post House - Lake Travis
Hatch/Carr/Ashcreek Structural Investigation - Austin
Headquarters Bldg - Kirtland AFB
20707 Henry Floor/Roof Decking Investigation – Lago Vista, TX
High Drive Foundation Dispute Resolution - Lago Vista
Highcrest Apartments Drainage / Trusses - San Marcos, TX
Highway 290 W 33ft Billboard - Austin
Hill Country Apartment Fire/Fireplace Damage Investigation - San Marcos, TX
Hill Country Apartment Foundation Investigation - San Marcos, TX
Hilton Hotel Wood Truss Defect Assessment – Oklahoma City, OK
Hoffbrau Restaurant Addition - Austin
Holiday Inn Select Loop 410 Retaining Walls/Porte-Cochere – San Antonio
Holiday Inn Select Canopy Wall – San Antonio, TX
Holloman AFB F117A Maintenance Docks/Hangars - Alamogorda, NM
6212 Holloway Residential Foundation/Superstructure Damage Repair - Austin
Hollywood Video Inspection, 1050 I35 - Georgetown
Horizon/Warner Bros. Sound Stage 3 & 5 Structural - Austin, TX
Horseshoe Casino Parking Garage Stairs - Bosier City, LA
Horseshoe Casino Stair Tower - Bosier City, LA
Hunter Construction Co. Steel Building Fire Investigation – New Braunsfels
Hurricane Katrina/Rita Damage Evaluations – MS, LA, TX
12343 Hymeadow Investigation – Austin
5508 Hwy 290 Seismic Evaluation - Austin
Ingleside Fleet Mine Center - Ingleside
Ingleside Village Apartments – Ingleside
International Center for Trade Truss Connections – Eagle Pass, TX
J.C. Penny Wall Collapse - Dallas
Jester Estates Oceanquest Pool Investigation - Austin
Joe's Crab Shack Restaurant Code Violations / Hazard Analysis – Houston
Jonestown Lighthouse – Lake Travis
126 Kittle Lane Foundation / Drainage – Three Rivers, TX
19 Knob Hill Circle Interim Deck Repair – Austin
Knox OSSF Feasibility Study - Austin
Knuckleheads - Austin
Lake Creek Village Shopping Center - Austin
5475 Lakeshore Drive Roof Assessment - Lago Vista
24714 Lakeside Cove Structural Inspection – Austin
Lakeway Church Fellowship Hall - Lakeway
6609 N. Lamar Fire Investigation - Austin
10817 N. Lamar – Roof Structure Repair – Austin
1607 S. Lamar - Austin
Lamar Craton Truss Collapse/ Injury – Alabama
Lanshire Duplex Stair Collapse Investigation - Austin
Lake Austin Riverboat Docking Facility – Austin
Lake Travis Lighthouse - Jonestown, TX
Lake Travis Post Office – Lakeway
4807 Lake Wichita Foundation / Drainage Inv. - Richmond, TX

7

1010 N. Lamar Roof/Wall Restructure – Austin
1420 N. LBJ Dr. Vibration/Energy Investigation - San Marcos
10807 Legends Lane Plumbing Leak Damage – Austin
Lewisville ISD School Construction Deficiency Evaluation – Lewisville
Light Bar Addition – Austin
1487 Little Bear Foundation Evaluation – Hays County, TX
LoLa Convalescent Ctr. Roof Collapse Investigation - Austin
Lockheed Maintenance Facility - Austin
Lockheed Missile Mezzanine – Austin
Log Cabin Structural/Foundation – New Mexico
13915 Lone Rider Trail Trusses - Austin
2401 Longview Phi Kappa Psi Temporary Structure - Austin
Louisiana State Highway Timber Bridge Collapse - LA
11620 Loweswater Drainage/Structural - Austin
Luis Fall / Injury / Roof Framing / Fasteners Issue - Houston
606 W. Lynn Condos Investigation - Austin
McCracken Pool Trusses - Austin
McCreary County USP – Kentucky
202 E. Main Restaurant Fire Damage Repair - Round Rock
Malmin Structural Damage Assessment Flooding/Drainage/Utilities - Austin
Mandalay/Circus Circus ADA Shower Seat/Injury Investigation – MS
Marble Falls Quarry Office Building – Marble Falls, TX
711 Marshall St. Foundation / Frame Investigation - Houston
819 Mariner Structural/Foundation Investigation - Round Rock
703 Marne Ln. Lightning Damage Assessment - Houston
Masonry Column Collapse Investigation - Houston
2518 Mathews Balconies / Boat Dock / Helicopter Pad Inv. - Austin
Maxwell Car Wash - Taylor
Maxwell Wastewater - Austin
Meadowbrook Gardens Apartments Designs/Inspections – Cedar Park
Meadowlakes Shopping Center - Marble Falls
Medical Center Automatic Door Closer Accident - Bentonville, AR
Memorial Baptist Church Trusses - Killeen
Menard BiFold Door Accident Investigation - Janesville, WI
Mezzaluna North - Austin
Micron Devices Seismic - Utah
310 Mitchell Foundation / Plumbing - Weatherford, TX
Mississippi Interstate Bridge Collapse – MS
2004 Mistywood Residential Repairs - Austin
Morrow Roof Member Collapse/Fall – Birmingham, AL
205 W. Morse Moisture/Mold/Storm Windows – Fredericksberg, TX
362 Mostyn Ln. Foundation / Framing Evaluation - San Marcos
Motel 6 Balcony/Stairs Restructure - Amarillo
Motel 6 Balcony/Stairs Restructure – 8010 N. I35 - Austin
Motel 6 Hurricane Ike Damage Evaluation / Reconstruction – Jersey Village, TX
Motel 6 Hurricane Katrina Damage Assessment – Biloxi, MS
Motel 6 N.IH35 Additions - Austin
Motel 6 Walkways/Stairs - Topeka, KS
Motel 6 Structural/Civil Evaluation - Camp Springs, MD
Motel 6 Structural/Civil Evaluation – Cranberry, PA
Motel 6 Structural/Civil Evaluation – Moline, IL
MSI Shop Expansion - Kyle
Mt. Olive Lutheran Church Addn. - Austin
Motorola Building "W" - Austin
Moss C.J.C. - Oklahoma City, OK
Museum of the Southwest Accident / ADA evaluation - Corpus Christi, TX

N.A.S. Commissary - Kingsville
Nellis AFB Composite Facility - Las Vegas, NV
New Elitch Gardens Theme Park - Denver, Co.
413 New Ledo Swimming Pool Investigation - Austin
New Lexington Fayette County Detention Center - Lexington, KY
New Territories Shopping Center Investigation - San Antonio
1211 Newton / Austin Motel Retaining Wall Collapse Repair Analysis – Austin
19 Nob Hill Circle Structural Expansion Study – Austin
North High School - Carrolton
North Hills Townhouse Foundation Investigation - Austin
North Lamar/Kramer Lane Warehouses - Austin
North Park Hotel Fire/Fireplace/Truss Repairs - Austin
1210 Nueces - Veneer / Deck / Stair Repairs - Austin
250 Oak Heights Barrier Drain - Wimberly
Oak Knoll Residential Foundations - San Marcos
Oakwood School Trusses - College Station
10807 Oasis Foundation Failure Inv./Negotiation - Houston
4802 Ocean Drive Structural/Ventilation Assessment – Corpus Christi, TX
Oilfield Road Hwy. Intersection Accident / Drainage / Non-Licensed Engineer - LA
Old Lockhart Hwy. Mobil Home Park – Travis County
Olivarez Subdivision/Utilities/Street Collapse Investigation – McAllen
Oltorf Oaks Apartments Chimney Fire Investigation - Austin
One Corporate Center Investigation - Austin
One Liberty Place Improvements - Waco
One Tech Plaza - Austin
Oyster Landing Boat Docks - Austin
Paleface Grocery - Travis County
Palm Valley Retain Stucco / Substrate - Round Rock
Paniagua Truss Collapse/Injury – Phoenix, AZ
12892 Park Art Studio - Austin
Park Central Apartments Stair Fall Inv. - Dallas
6103 Peachtree Hill Ct Drainage / Foundation Damage - Kingwood
2212 Pearl Fire Damage Inspection - Austin
540 Pecan Grove Boat Dock Improvements - Horseshoe Bay
Penbrook Apartments Masonry Veneer Repairs - Austin
Penbrook Club Apartments Building 6 Breezeway Inspections - Austin
J. C. Penny Brick Veneer Wall Collapse – Dallas
Pete Maravich Assembly Center Investigation - Baton Rouge, LA
Point Venture Townhouse Multi Building Structural Assessment – Point Venture, TX
Precision National Structural Investigation – Waco
Public Housing Fall Hazard Investigation - San Antonio
29384 Raintree - Plumbing / Foundation / Superstructure Investigation - Fair Oaks Ranch
Rayco Fire Retardant Investigation - San Antonio
RCBS Hospital HVAC / Contract Issues - Austin
1913 Real Catorce Foundation/2nd Floor Framing Repairs - Austin
Recreation Sports Building/A&M/Window Wall - College Station
Red Robin Restaurant Air Quality/Moisture/Roof/wall Leaks - San Antonio
Regency Manor Apartments Structural Walkway Replacements – San Antonio
Regents School Water Intrusion/Wood Floor Damage Investigation - Austin
8910 Research Parking Lot Investigation - Austin
12034 Research High Speed Vehicle Collision Vibration/Energy Damage Assessment - Austin
Retano Wastewater System - Austin
2816 Revere Townhouses Foundation / Superstructure Inv. - Houston
1913 Rio Catorce TJI Floor Joist Investigation - Austin
River Authority Conveyor - San Antonio
3800 Rivercrest Boat Dock Feasibility Study - Austin

9

2311 Rogge Ln Swimming Pool Leak/Foundation Assessment – Austin
Rone Cellphone 160 Ft. Guyed Tower - Barton Creek, Austin
Round Rock Express Baseball Stands/Rails – Round Rock
Round Rock Express Cables/Structural Designs - Round Rock
Round Rock Express Supports – Round Rock
10713 RR 620 Roof Assessment - Austin
12301 Saber Trail Wind Load Stabilization – Austin
Sam Bass Road Concrete Pavement Analysis - Round Rock, TX
Samsung U. Project I Beam Connections - Austin
San Antonio Housing Authority v. Magi Realty - Litigation 150 + Houses - San Antonio
2200 Scenic Boat Dock Repairs - Austin
16020 Scenic Oaks Trail Flood Analysis – Buda, TX
Schneider Manufactured Home Investigation - La Grange, TX
Secretariat Masonry Arches/Drainage - Hayes Co., TX
Segefield Drainage Study - Austin
6106 Shadow Mountain Structural Repairs – Austin, TX
Sharper Image Mezzanine - Austin
Sheraton Hotel Parking Garage Repairs - Austin
Silver Pine Pool - Austin
Simplex Grinnell Structural Evaluation – Pflugerville, TX
Sir Ivor Cove Swimming Pool Evaluation - Austin, TX
419 E. Sixth St. Second Floor Rehab - Austin
421 E. Sixth St. ADA Investigation - Austin
500 E. Sixth Rehab - Austin
500 E. 6th Fire Escape Restructure – Austin
505 E. 6th Structural Investigation - Austin
515 E. Sixth Roof Framing - Austin
600 E. Sixth Roof & 2nd Floor Framing Evaluation - Austin
723-725 E. Sixth Rehab - Austin
10211 Skyflower Floor Stabilization – Austin
Skylight Accidental Breakage/Fall / Injury - Mission, TX
Skyridge Plaza Structural Inspection - Round Rock, TX
South Grand Prairie High School - Grand Prairie
329 South Guadalupe Water Intrusion - San Marcos
Southlake Shopping Center Stairs - Southlake, TX
Southlake Subdivision Sanitary Sewer Collapse – Southlake, TX
120 South Main Roof Drainage Issue - Victoria
South Texas Art Museum - Structural Barriers / ADA / Injury - Corpus Christi
Southwest Medical Park - Austin
Southwest Texas State University Bridge - San Marcos
Southwestern University Fine Arts Investigation - Georgetown
SpeedFabCrete Tilt Wall Investigation - San Antonio
702 SpringBrook Water/Floor Truss Damage - Leander
St. Paul's Catholic Church Addition - Austin
St. Pete Times Forum Arena Concrete Tolerances Evaluation – Tampa Bay, FL
#18 St. Stephens Pool Investigation - Austin
Stair and Guardrail Designs - Sheppard AFB
St. Stephens School, Quinn Hall Addition - Austin
Stahl Roof Condition Assessment - Austin
Stayton Water Damage - Hardwood Flooring /Plumbing / HVAC Spec. Mediation - Victoria
Steck Vaughn Floor Structure Investigation - Austin
119 Stephens Lane Window Leakage Investigation – Round Rock
Stop and Go Boat Storage Inspection - Austin
Studio 6 Motel Sam Houston Parkway Foundation/Flooding/Plumbing - Houston
Stum Ladder Fall Investigation - Arlington
5353 Sugar Hill Foundation / Swimming Pool / Drainage Investigation - Houston

Summit Apartments Wood Balcony Investigation – San Marcos, TX
Summit at West Rim Foundation - Austin
Sun Oil E/W Pipe Rack - Houston
Sunchase Condos Investigation - Austin
Sunchase Unit 102 – Austin
Sunfish Wastewater System Improvements - Austin
Sunnyvale Condominiums Replacement Stairs – Austin
Superstructure Analysis Riverview Apartments - New Orleans, LA
Superstructure Analysis Shadowlake Apartments - Jefferson Parish
TAMU Recreation Sports Building - College Station
Texas Department of Banking Structural Investigations - Austin
Texas Department of Corrections - Abilene
Texas Department of Corrections Alberti Unit - Abilene
Texas Department of Corrections - Beaumont
Texas Department of Corrections - Beeville
Texas Department of Corrections - El Paso
Texas Department of Corrections - Gatesville
Texas Department of Corrections - Harris Co.
Texas Department of Corrections - Hutchins
Texas Department of Corrections - Liberty Co.
Texas Department of Corrections - Mitchell Co.
Texas Department of Corrections - New Boston
Texas Department of Corrections - Plainview
Texas Department of Corrections - Wichita Falls
Texas Department of Corrections - Karnes County
Texas Department of Corrections Tower - Amarillo
Texas Department of Health Laboratory Stairs/Guardrails - Austin
Texas Land & Cattle Co. Restaurant Fire Investigation – Richardson, TX
Texas Supreme Court Buildings B & C - Austin
Thaxton Road Septic Systems - Travis County
315 W. 35th Apartment Foundation/Plumbing/Superstructure – Austin
2909 Thousand Oaks Truss Evaluation – Austin
27 Tiburon Dr. Groundwater/Drainage/Foundation – Hills of Lakeway
408 Tilbury Construction Deficiencies - Austin
9816 Timber Ridge Pass Septic Investigation – Austin
Timbers Apartments Structural / Drainage/ Plumbing Evaluation - San Marcos, TX
Tolt Water Treatment Plant Design Deficiency Evaluation – Seattle
5812 Tom Wooten Drive Floor Trusses/Water Intrusion/ Bracing - Austin
Tower Carwash Pavement / Building Water Leakage Evaluation - Round Rock
Town Lake Villas Drainage/Water Intrusion/Structural – Austin
TOWTRC Council Training Center Evaluation/Report – Texas
Twenty-First Street CoOp/ Commons Investigation - Austin
Twenty-First Street CoOp Structural Lofts - Austin
U.S. Naval Station - Ingleside
Unity Church Structural Investigation - Austin
University of Houston Athletic Facility - Houston
University of Texas Life/Health Steel Connections - Brownsville
University of Texas Memorial Stadium Additions - Austin
University of Texas Residence Dorm Stairs - Austin
University of Texas Soccer Stadium - Austin
University of Texas Tower/Observation Deck Investigation - Austin
University of Texas West Grandstand - Austin
USP Atwater Code Issues - Austin
230 Vailco Lane - Wall Plumbness / Structural Framing - Austin
230 Vailco – Wall Bracing/Plumbness Issues - Lakeway
Valley View Apartments Water Break / Structural / Condemnation - Georgetown

11

1802 Vance Circle Drainage / Foundation Deficiencies - Austin
Victoria Square Roofing Repair Scope – Austin
Village at Gracy Farms Roof Assessment – Austin
12600 Wallisville Inspection - Houston
3909 Warehouse Row Structural/Remediation - Austin
1803 Warwick Cove Moisture/HVAC/Structural Investigation – Round Rock, TX
Water/ Wastewater No. 19 Walkways and Guards - Travis Co.
Waterfront Condo Boat Docks - Austin
Waterloo Ice House Additions - Austin
Weberg Furniture Store Roof Collapse Investigation - Temple
Wells Fargo Bank ATM/Parking Lot Injury – Pasadena, TX
Wendy's Restaurant Ladder Investigation - San Antonio
1701 West Avenue Structural Investigation - Austin
Westchester Apartments Investigation - San Antonio
Western Currency Tower - Ft. Worth
Westmoreland Bridge Collapse Investigation - Dallas
Wilder Self Storage - Alabama
2606 Wilson St. Apartments - Stair Repairs / Upgrades - Austin
Williamson County Annex - Taylor, TX
Willow Creek Apartments Roof Investigation - Houston
Wimberly Wastewater Holding Tank - Wimberly
2730 Winding Brook Structural/Civil – Austin
6402 Woodhue Foundation/Structural Investigation - Austin
Zone Apartments Swimming Pool/ Building Foundations – San Marcos, TX.


FOR OTHER FIRMS:

American Founders Office Building - Austin
American Oil Company No. 1 Ultracracker - Texas City
Austex Food Processing Facility - Austin
Austin High School Improvements - Austin
Austin's Colony Wastewater Treatment Plant - Travis County
B&R Instrument Building - Houston
Bain Road Mobile Home Park - Travis County
Banister Lane Flood Control - Austin
Bastrop County Bridge - Bastrop
Baxter Residence - Midland
Bayou Bend Townhouses - Midland
Beal Lakehouse Facilities - Brownwood
Bergstrom AFB Improvements - Austin
Bergstrom AFB Squadron Operations - Austin
Big Spring High School Remodeling - Big Spring
Bluebell Estates Mobile Home Park - Travis County
Bluebell Ridge Mobile Home Park - Travis County
Bluebonnet Mobile Home Park - Travis County
Brackenridge Hospital Expansion - Austin
Braker Lane Elementary School - Austin
Brown Distributing Company Improvements - Austin
Brown Residence - Midland
Brown School Improvements - Austin
Browning Hangar Improvements - Austin
Brushy Creek Bridge - Round Rock
5046 Bull Creek Office Building - Austin
Burleson Residence - Midland
Bus Transit Facility - Austin

12

Butcher Mfg. Foam Panel Testing – Lafayette, LA
Campbell Center – Dallas
Capital of Texas Plaza Storm Structures – Austin
Casbeer Miniwarehouse Park – Midland
Cat Mountain Subdivision – Austin
Cedric's – Midland
Celanese Chemical Company Signage – Houston
Chandler Building – Austin
Charlie's Liquor Store and Warehouse – Austin
Charlton Ranch Facilities – Brewster County
Charter Hospital – Austin
Chevy Chase Center Federal Express – Austin
Church of God of Prophecy – Midland
Church of The Holy Redeemer – Austin
Church of The Rock – Odessa
Clark Residence – Menard
Clearview Office Building – Midland
Clifton Lutheran Sunset Home – Clifton
Cody Cattle Company Restaurant – Midland
Coffey Residence – Austin
Colbert Residence Wastewater – Austin
Collins Residence – Midland
804 Congress Office Building – Austin
Coors Distributor Facilities – Midland
Cornerstone Apartments – Austin
Courtyard Apartments – Midland
CreditBanc Building Far West Blvd. – Austin
Creedmore Meadows Drainage – Austin
Crescent Place – Midland
Cross-Town Sewer Interceptor – Austin
Culver Road Estates Mobile Home Park – Travis County
Dairy Queen/ N. Lamar – Austin
Davenport Residence – Midland
Davis Water Treatment Plant, Phase III – Austin
Deepwater Docking Facilities – Kuwait
Devine Junior High School – Devine
Doble Junior High School – Austin
Dole Residence – Midland
Downtown Fire Station – Livingston
Driftwood Surveying / ATS Pecan Springs Subdivision Review – Austin
Duncanville Apartments – Duncanville
East Side Park Improvements – Austin
East Texas Pulp & Paper Improvements – Houston
Eighth Street Arms Apartments – Austin
El Chico Restaurant – Midland
Elroy Road Mobile Home Park – Travis County
Emerson Place Masonry Investigation – Midland
Enfield Plaza Foundation Improvements – Austin
Fann Cantilever Crane #1 – Austin
Far West Blvd. Swimming Pool – Austin
Fields Residence – Odessa
First Presbyterian Church – Coleman
Fisher Scientific Laboratories – Atlanta, GA
Ft. Sam Houston Base Facilities – San Antonio
Ft. Sam Houston Commissary Expansion – San Antonio
Forum Shopping Center Improvements – Austin

13

Garden City Hwy. @ FM715 Warehouse - Midland
Gary Job Corps Center - San Marcos
Gattis School Road Conv. Store Improvements - Round Rock
Geigy Chemical Corporation - Louisiana
Gethsemane Lutheran Church Improvements - Austin
Glenwick Apartment Conversion - University Park
GM Steakhouse/Congress Ave. - Austin
Goforth Village Wastewater Plant - Austin
Gooch Residence - Midland
Grandview Warehouse - Odessa
Greenville Ave. Condos/Apartments - Richardson
Griffith Residence - Midland
Grosev Medical Building - Midland
2000 Guadalupe Office Building - Austin
2200 Guadalupe Office Building - Austin
Gulf States Utilities Pump Station - Montgomery County
Hemphill Park Apartments - Austin
Henderson Residence - Midland
Henderson Vessel Foundations - Midland
Henderson Warehouse - Midland
Hickory Farms - Midland
Hillander School Expansion - Midland
Hilton Hotel Improvements - Midland
Hinesly Restaurant - Merkel
Hissom Residence - Midland
Holiday Hill Landfill - Midland
Housing, Water and Wastewater Improvements - Kuwait
Huggins Pumping Unit Service Warehouse - Midland
Hunter Residence - Midland
Idlewilde Village - Midland
Inverness Condominiums - Bastrop
Jefferson Building - Austin
Jollyville Rd. Office Building - Austin
Jonsson Additions - Midland
Kelly AFB Facilities - San Antonio
Kennedy Residence - Midland
La Amistad Restaurant - Midland
La Prada Subdivision - Garland
Lackland AFB Exchange Sales - San Antonio
Lackland AFB Facilities - San Antonio
Lackland AFB Police Operations - San Antonio
Lackland AFB Shop Clothing & Equipment - San Antonio
Laughlin AFB Air Rescue Opns. Bldg - Del Rio
Laughlin AFB Shop Aircraft Bldg - Del Rio
Leander Hills Water and Wastewater - Austin
Leander Post Office - Austin
Lewis Sign Co. Signage - Austin
Lewisville Apartments - Lewisville
Los Patios Restaurant - Midland
McAngus Road Mobile Home Park I & II - Travis County
206 Main Building - Midland
Manchaca Mobile Home Park - Manchaca
Mathews Elementary School - Austin
Metro Building Improvements - Midland
Mewhorter Residence - Midland
Midland High School Improvements - Midland

14

Midland Savings Association - Midland
Missouri Street Restaurant - Midland
Monopod Structure - Cook Inlet, AK
Mustang Meadows Wastewater - Austin
Nakoosa Edwards Paper Plant - Arkansas
Nash Building - Austin
Nieta's Cafe Addition - Midland
North Austin Junior Swimming Pool - Austin
North Blvd. Addn. Office Building - Midland
Northchase II Office Building Improvements - San Antonio
O'Donnell Residence - Midland
Ogden Office Buildings - Austin
Old Southern Ice House - Midland
Oltorf Rd. Office/Warehouse Park - Austin
O'Neill Barbeque - Midland
Pappagallo Expansion - Midland
Parkwood Apartments - Richardson
Permian Electronics Radio Tower - Midland
Petro-Tex Neoprene Plant - Houston
Petroleum Museum Central Power - Midland
Pflugerville High School - Pflugerville
Piney Creek Bridge - Bastrop
Plantation Hills - Midland
Plaza Center No. 15 - Midland
Plaza Office Building "K" - Midland
Plaza Shopping Center Buildings F1 & F3 - Midland
Plaza Shopping Center Signage - Midland
Pollard Residence - Midland
Princeton Business Center - Midland
Public Safety Building Improvements - Midland
Radio Shack - Midland
Ramsey Medical Center - Austin
Ramsland Residence - Midland
Renner Road Subdivision - Dallas
Richardson Apartments - Richardson
Ridgemar Court Investment #1 & #3 Condos - Midland
Rodriquez Restaurant - Midland
Roper Warehouse - Midland
Rowlett Flood Plane Study - Rowlett
Rusk Dental Office - Midland
St. June Subdivision - McKinney
St. Martin's Lutheran Church - Austin
St. Nicholas Episcopal Church Improvements - Midland
St. Paul Evangelical Lutheran Church - Taylor
Sam Houston State Office Building - Austin
San Felipe Neighborhood Facility - Del Rio
Sandra Street Warehouse Improvements - Austin
Scottsdale Addition - Midland
Shenandoah Townhouses - Dallas
Sheppard Memorial Hospital Improvements - Burnet
8118 Shoal Creek Dental Center - Austin
7958 Shoal Creek Medical Office Building - Austin
Shoal Creek Office Building - Austin
Showcase I - Midland
Shull Warehouses - Midland
Six Ranch - Midland County

15

Skillern's Drug Store - Midland
Sledge Residence - Midland
Smith Residence - Midland
Smith Building - Midland
Smithville Landfill - Smithville
South Austin Fire Station - Austin
1006 South Big Spring Addn. - Midland
Spicewood Wastewater Treatment Plant - Austin
Stephenson Warehouse - Midland
Sundae Palace - Austin
Sunshine Camp - Austin
Superior Oil Building Improvements - Midland
Sutton Place Condominiums - Midland
Texaco Offshore Drilling Platforms - Houston
Texas Department of Health and Mental Retardation - Austin
Texas Department of Human Resources - San Antonio
Thaxton-Coulver Mobile Home Park Wastewater Utilities - Travis County
Thomason Townhouses - Midland
Timberline Terrace Office Building - Austin
Town & Country Day Care Facilities - Austin
Travis County Blood Bank - Austin
Travis County Courthouse Annex - Austin
Travis County Courthouse Improvements - Austin
Travis County Courthouse Pedestrian Bridge - Austin
Travis County Parking Garage - Austin
Travis Street Low Income Housing - Midland
Treanor Equipment Co. Improvements - Midland
Tres Amigos Restaurant - Austin
Trinity Lutheran Home - Austin
Trinity Presbyterian Church Additions - Midland
Trinity School Improvements - Midland
Turner Building Improvements - Midland
Twenty-fourth Street Condos - Austin
Union Hall Baptist Church Addn – Liberty Hill, TX
Union Texas Oil Co. Extraction Plant - Geismar, LA
United States Embassy - Guyana
University Lutheran Center - Austin
University of Texas Regents' Office Building - Austin
University of Texas Harry Ransom Center - Austin
University of Texas of the Permian Basin - Odessa
University of Texas Swimming Facility - Austin
Vaughn Building Improvements - Midland
2714 W. Wall Warehouse - Midland
Washington/McGarvey St. Warehouses - Midland
Water Line Utility Improvements - Martindale
Water Tower - Martindale
Water Tower Renovation - Midland
Weatherford Landfill - Buda
Western Sizzler Steakhouse - Midland
Westgate Business Center - Midland
Westgate Acres Section 2 Subdivision/Utilities/Development- Midland
Westgate Miniwarehouse Development - Midland
Westlake High School Improvements - Austin
Westminister Manor Additions - Austin
3000 Westminister Residence - Dallas
Westminster Presbyterian Church Improvements - Austin

Wild River Canyon Park - Midland
Wilson Building - Midland
Windmill Hill Apartments - San Antonio
Winston Swimming Pool Facility - Midland
Woodlands Street, Bridge & Drainage Facilities - Woodlands
Yancey Residence - Midland
Y.W.C.A. Improvements - Richardson
Young Vehicle Storage Facility - Midland
Zoller Residence - Midland

**AMSTAR ENGINEERING, INC.**
Structural/Civil Consultants
707 River Road
Austin, Texas 78734
(512) 263-3661
Fax (512) 607-6641

Registered Professional Engineers
Texas      Oklahoma      Arizona
Louisiana      Georgia      Colorado
Mississippi      Utah      North Carolina
Kentucky      Alabama      Arkansas
Texas Firm F-1975

August 28, 2015

Mr. Chuy Ramirez
The J. Ramirez Law Firm
Ebony Park Estates Business Center
Suite B
700 North Veteran's Blvd.
San Juan, TX 78589

Ref: Parr San Juan Alamo Independent School District v. Descon and ERO
       Project No. 2067

Dear Mr. Ramirez:

In early April, 2015, you contacted this office about a matter involving a school renovation project that had been undertaken by the Parr San Juan Alamo Independent School District ("District") at the Memorial Middle School campus. The renovation had included work at the campus' Main Building. A portion of the Main Building had collapsed as a result of the means and methods of the general contractor -- Texas Descon L.P. ("Descon"). Reportedly no one was injured.

The Main Building had consisted of two floors and a partial basement of vacated administrative and classroom space. On the date of the collapse the structure was almost 100 years old. You advised that during the renovation project and initial demolition of a small "link" structure adjacent to the Main Building, a portion of the Main Building had collapsed.

## 1.0 Introduction

About February, 2008, the governing board of Pharr San Juan Alamo Independent School District had authorized conducting a preliminary investigation and assessment into the feasibility of upgrading and/or renovating existing structures at the District's Memorial Middle School campus in Pharr, Texas. One of the buildings considered for renovations and/or upgrades was a three-story "main building" constructed in 1915 or 1918 with subsequent remodeling and/or additions in 1976 and 1986. Other buildings considered for renovation

1

included a building used for textbook storage and a building used as a band hall-- both originally constructed sometime in the 1940's.

Ultimately the District chose ERO International, LLP ("ERO") of McAllen, Texas to serve as project architect. An Owner Architect AIA contract was signed on or about December 15, 2008. ERO executed another contract dated approximately May 26, 2010.

The structural engineer chosen for the Main Building complex was Frank Lam & Associates, Inc. ("Lam") of Austin, Texas. The agreement between ERO and Lam was signed on or about September 8, 2009.

Since there was an indication that the Descon might have overcharged the District for reconstruction costs, you and I discussed the damages methodology that could be utilized. You had available in hand the change orders that the contractor had generated around the time of the collapse incident. The contractor had submitted the change directives and change order requests to the architect, ERO. ERO processed the change order requests through the District. The District in turn had routinely processed the change orders, depending in part on the District's belief that ERO would carefully review them for accuracy and relevancy, and also depending on the representations of two independent engineering firms. In addition, there were numerous "change directives" which were afforded to "allowances" in the contract.

The other engineers, Mr. Frank Lam of Frank Lam & Associates, and Mr. Bruce I. Morris, PE of Rimkus Consulting Group, Inc. ("Rimkus"), had conducted on-site inspections of the collapse damage and had written reports. Both Mr. Lam and Mr. Morris wrote their reports in a manner that led the District to believe that the damage area was a small segment at the west end of the Main Building that had actually collapsed, without going into any detail of other areas damaged as a result of the collapse at other portions of the building structure.

Mr. Morris had written that Rimkus was retained to determine the "limits" of intended (demolition) work that was to be performed by the contractor and to determine the extent of damage to the building outside of those limits as a result of work being performed by the contractor.

A table of damages, based on the change orders, is attached at the end of this report. Also included in the table, unrelated to the collapse, are charges pertaining to water intrusion that the District had to absorb by the failure of ERO and Lam - the structural engineering firm involved in the design aspects of the renovation.

## 1.1 Purpose and scope

The purpose of my investigation was to attempt to identify the potential cause of the September 22, 2010 collapse and the building structure collapse mechanism, and also

determine the extent of the damage area.  Unlike the investigation and report of Lam and Rimkus, my investigation shows that the damaged area encompasses the entire Main Building, as well as portions of the East and West buildings that had been previously attached to the Main Building via enclosed hallways termed "links."  Most of the columns in the various structures required re-strengthening after the collapse had occurred.

I understand that portions of the building plans and notes have been furnished in discovery. Refer to Exhibit 1 that shows a composite floor plan and Exhibit 2 that shows a cross section through the main building and adjacent structures.

This report is based in part on my review of  relevant sections of the documents which I have reviewed, including the architect contract between the district and ERO and the ERO contract with Frank Lam and Associates, the various assessments and evaluations prepared by them, the plans and specifications for Phase I, change directives and change orders, photographs, the construction contract, and reports and plans. I have also reviewed the post-collapse reports by Frank Lam & Associates; Rimkus Engineers ; Raba Kistner Geotechnical Consultants; GCG Garner Consulting Group and Delta Structural Technology.

I have also relied on my formal education and training as a multi-disciplined (including structural) Texas licensed professional engineer, my forty-five-plus years of experience in professional engineering design and inspection services; plus previous experience as a stock-holder and/or CEO of construction companies with cost estimating expertise.

In reaching my opinions as to whether ERO and Frank Lam & Associates failed to perform in accordance with the standard of care applicable to structural engineers, I have made certain assumptions regarding the extent of the terms of the engagements between ERO and Frank Lam & Associates.  I have also assumed that the documents made available to me do not omit critical facts.  I reserve the right to modify my opinions should further documentation clarify a matter.

This letter-report is preliminary in that it represents my observations and opinions to date; and may be changed with or without notice should I receive additional information that merits reconsideration.  I have not needed to visit the site to reach my opinions and conclusions.  Refer to Appendix "A" for Definitions.

### 1.2 Documents furnished

1. Architectural and engineering plans and notes, including early progress drawing files.
2. Specification from the project manual pertaining to "Demolition". See Exhibit 3.
3. Change orders and change directives
4. Emails among architect and structural engineer
5. Reports by ERO; Terracon; Frank Lam & Associates; Rimkus; Raba Kistner Geotechnical Consultants; GCG Garner Consulting Group and Delta Structural Technology

3

6. CDs containing photographs and other information supplied by ERO and Frank Lam & Associates, Inc.

**2.0  Main Building and Connected Structures**

The following discussion expands on the text of the discoveries made by Frank Lam in the Lam report dated October 18, 2010 after the building segment had collapsed:

Before the rehabilitation project began, the interconnected school building consisted of the Main Building, the East and West Wings, and the East and West Links that connected the Main Building to the two Wings. See Exhibit 1.  Refer to Exhibit 2 for a building section detail.

The Main Building was constructed with a partial basement. See Exhibit 4. The basement has a floor elevation approximately five to six feet below grade, leaving the first floor about five feet above grade. See Exhibit 2.

The columns and exterior walls at the basement consist of reinforced concrete. The interior columns in the basement support the interior portions of the first floor slab and columns loads from above; and the exterior concrete walls support the exterior portion of the first floor slab as well as the load bearing walls carrying the loads from above.

The first and second floors (Exhibits 5 and 6) are constructed of reinforced concrete slab and concrete beams. Interior columns are also reinforced concrete. The first to second floor interior columns support a portion of the second floor concrete slab and loads from above, and the second floor to roof interior columns support a portion of the reinforced concrete roof. A brick parapet projects from the perimeter of the roof.

The exterior walls are brick and load-bearing clay tiles that support the exterior slab portions of both the second floor and the roof.  The clay tile walls contain exterior clay tile pilaster columns that also carry exterior slab portions of both the second floor and the roof. These clay tile pilaster columns also abutting the more recently constructed East and West Links. Load bearing structural clay tile walls were vintage construction practice of the early 1900's. See Exhibit 7.

There were two large openings in the load bearing walls and concrete beams would act as headers across the openings. Some openings had been filled with unreinforced concrete masonry units.

The two Wings and the Links have a first floor at ground level and a second floor. They were constructed of reinforced concrete slab and beams at the second floor and the roof. The later addition of the Wings and the Links attached to the Main Building without an expansion joint. The relevance of the lack of an expansion joint is elaborated on below.

4

The Links were supported by cast in place concrete columns and beams. The columns in the Links abutted the columns in the Main Building. Allegedly, the difference in column type between the clay tile columns inside the Main Building and the concrete columns inside the Links could not be visibly ascertained by a casual visual examination because they had been plastered together at the time the Links were constructed even though it would be obvious that the Main Building had an exit at that location and the Links were constructed much later in time. To clearly ascertain the difference in column type, an engineer would need to conduct testing as part of a detailed examination before preparing the recent plans.

## 3.0 Background

### 3.1 Terracon Inspection and Report

On or about February 22, 2008, a Houston-based firm of consulting engineers - Terracon - published its report of an on-site property condition assessment and inspection of the buildings considered for renovations/upgrades. Terracon's assessment was based upon visual inspection of the property, some construction drawings relating to alteration and remodeling projects, as well as interviews with the District's construction manager, Mr. Ray Sanchez and Mr. Eli Ochoa, P.E., A.I.A., an engineer working for ERO.

Terrracon noted (page 11) that the foundation for the main building was not visible at any location; however, no significant signs of structural distress were noted in the building framing observed. Some minor stair step diagonal cracking in the brick veneer was noted on the upper area of the north elevation near the main entrance and on the east wing of the original structure. Terracon reported that the cracks had been previously repaired and did not appear to be dynamic in nature.

In describing the building structure, Terracon wrote: "The Main Building appeared to consist of a reinforced concrete frame with masonry and structural clay tile exterior walls. Exterior stairwells were added during previous remodeling. Original open spaces on either side of the original connecting corridor from the Main Building to the Auditorium were enclosed utilizing steel framing that supports metal roof decking and stucco-finished exterior walls. ...The Main Building roof appears to be applied to a reinforced concrete deck..."

Terrracon noted (page 11): "The building framing elements were generally partially obscured in all buildings. The reinforced concrete structure of the Main Building generally appeared to be in good condition with isolated areas of damage, primarily due to water infiltration.

**3.2 ERO Inspection and Report**

About March 3, 2008, ERO completed its own inspection of the existing structures at Memorial Middle School. ERO's report of its inspection noted various problems with the existing structures and the site, including large amounts of standing water and needed repairs or upgrades to the roofing system and exterior walls.

The report ultimately recommended that the District should replace the campus rather than proceed with renovations and upgrades, and cautioned that major transformations, such as an evisceration of interior components for structural repairs to the foundation, sub-flooring and walls would be necessary if the District proceeded with renovations.

ERO noted (page 1): "Moisture problems are present both inside the buildings and with surface drainage on site. Six inches of standing water (possibly inside the basement) as seen on a site visit, if not corrected soon with cause further structural damage to the facilities. Water leakage from roofs, old windows and doors, as well as HVAC equipment also add to the ongoing decay of the facilities."

ERO (page 2) noted: "Costs to remediate the structural components of the buildings are extensive. Uneven settlement of the foundation has occurred, requiring underpinning." With a special note concerning demolition, ERO continued: " Often times in selective-demolition to structure for repairs, unknown circumstances become apparent that lead to additional demolition than what was planned."

ERO (page 2) noted: "If existing buildings are to be renovated for middle school use, the buildings would need major transformations. The main building would likely require evisceration of interior components so structural repairs could be made to the foundation, subflooring and walls."

On March 28, 2008, Eli Ochoa, professional engineer with ERO, noted in a letter: "There are no significant signs of structural distress on any of the buildings' foundations. There are some noted perimeter wall cracks on the Main Building and the old band hall wing of the Stambaugh Building. The cracks are most likely caused by minor differential settlement of the foundations and can be readily repaired by underpinning the perimeter foundation beams with cast-in place concrete drilled piers.... While the buildings are in generally good condition, isolated areas of damage due to water infiltration are evident throughout the buildings."

Ultimately, on the basis of reported subsequent representations from ERO that it would be safe, feasible and economically practicable to proceed, reportedly the governing board of the District authorized the renovation/upgrade project to be completed in two phases.  Phase I would be the upgrade/renovation and adaptive reuse of the three story main building ("Main

Building") and Phase II would be the upgrade/renovation and adaptive reuse of the band hall (Stambaugh Building) and a building used for textbook storage ("textbook storage building").

### 4.0 Frank Lam & Associates Contract and Reports

### 4.1 Terracon budgeted a $40,000 fee for a structural inspection and report

The February 22, 2008 Terracon report concluded that the buildings (in general) were in "fair to poor condition" and recommended (page 2) that a structural engineer be budgeted $40,000.00 to conduct an on-site review and report in order to determine the structural condition and capacities of certain buildings and prepare recommendations for renovation.

In its report, Terracon had provided estimated repair cost tables. Terracon included an estimated cost of "Structural Engineer, On-site review & report" of $40,000.00. Defined duties of the structural engineer were "To determine structural condition and capacities of certain buildings and prepare recommendations for renovation." Terracon did not include an estimated additional cost of the engineer to prepare the structural plans and similar construction documents.

### 4.2 ERO budgeted a $27,200 fee for a structural inspection and report.

ERO, in its March 3, 2008 report with similar tables as Terracon, reduced Terracon's estimated cost of structural "on-site review & report" from $40,000.00 to $27,200.00 (ERO page 1 of 4) while referring to the Terracon report as the source document. Terracon shows no such cost figure.

### 4.3 ERO offered a $10,940 fee to Frank Lam & Associates for a structural inspection and report.

On September 8, 2009, Jesus V. Delgado of ERO sent a "Letter Agreement for Structural Engineering on the PSJA ISD Early College High School project" to Frank Lam of Frank Lam & Associates, Inc. ("Lam") referencing "your proposals" in which Lam had agreed to conducting a "Structural Evaluation and Report of Existing Facility for $10,940.00 " which is a much lower fee than the $40,000.00 estimated by Terracon and less than half the $27,000.00 fee estimated by ERO. Such a substandard fee would not enable Lam to undertake a thorough professional investigation, including testing, and determination of the structural condition of the Main Building.

The ERO letter also contained onerous terms. Lam had also agreed to prepare "Structural Engineering and Construction Documents for Renovation & Additions to the Main Building - Phase I for $26,360.00 " Mr. Delgado wrote: "The total combined fixed fee is $37,300.00. This

combined amount will be the agreed upon total upon which to invoice. Invoicing shall be on a percentage of total work completed. Following is how I interpret the fee payment arrangement:

1. Schematic Design - $20%. Lam would not be paid for the structural evaluation and report until after ERO had conducted it's schematic design on which the structural evaluation and report depended. After the architect had completed its schematic design, ERO would be paid 0.20 x $37,300.00 = $7460.00.

2. Design Development - 20%. Lam would not be paid the balance owed to him on the Structural Evaluation and Report of Existing Facility of $10,940.00 - $7460.00 = $3480.00 until the architect had completed its next stage - Design Development - and was ready to start on the plans and specification.

In my opinion, Lam had limited itself to few choices under this contractual arrangement:

1. His choice was to conduct a proper structural evaluation and report that would include limited testing of structural building elements; attempting to discover the source of the water problem in the basement of the main building; and reach conclusions that would indicate that the exterior walls at the main building are load bearing walls and the columns are combination clay tile and concrete -- not a complete concrete frame as Lam evidently ultimately assumed. Lam could then recommend in his report that special precautions be taken during demolition. Such a proper investigation and report by Lam would be more costly to Lam, and if Lam went to ERO for more money, ERO would need to go to the District for more money. The District would learn that the overall budget would need to be increased by imposing additional safety procedures related to regular monitoring of the demolition process by the Contractor.

2. An alternative to Lam - Risk the cost of driving to the site, taking some photographs, and writing a brief report that everything was structurally sound thereby assuring Lam of eventual payment.

3. Another alternative is that Lam was simply careless in conducting its inspection and preparing its report and therefore, professionally negligent.

In my opinion, ERO had already formed its own opinion that the building was sound enough to generate substantial architectural fees. Nevertheless, instead of walking away, Lam accepted the conditions, most likely because Lam would eventually receive a $37,300.00 total fee.

Had Mr. Lam made the proper professional investigation including testing, he would have determined in advance the nature of the structural elements of the buildings and included in the plans a practical, safe way of notifying the contractor of the need for proper shoring and bracing and on-site observations that would need to made with regard to demolishing the Link portion

8

of the buildings in order to protect the Main Building from the contractor's potential means and methods for conducting the demolition process.

It is my professional opinion that Mr. Frank Lam, P.E. and Frank Lam & Associates, Inc. is responsible for at least the following act, error, or omission that exists on the Project -- failing to undertake a more thorough investigation and determination of the structural integrity of an existing building for future modification and existing conditions of the facilities.

### 4.4 Lam Report dated September 30, 2009

Mr. Frank Lam, PE compiled a report dated September 30, 2009 stating that Frank Lam & Associates, Inc. "was contracted with ERO Architects to provide a structural engineering report for the Early College High School Project in PSJA ISD. The engineering report includes evaluation of the existing structure and discussion of the issues related to renovations of the existing buildings, and provides recommendations for the structural system of the proposed building additions."

Under "Scope of Work" the report states: "The scope of work includes a site visit to observe the structural members and any major structural distresses in order for us to evaluate the structural condition of the existing buildings. The site visit was performed on August 27, 2009. Renovation items which affect the structure include proposed openings in the basement concrete wall, demolition of the structures in between the main building and the east and west wings, demolition of the exterior raised walkway at the auditorium annex, demolition of the central entry stairs at the north side of the main building, cutting the existing floor slab for pipe penetrations and new mechanical chase openings, proposed openings in the exterior masonry walls at the main building .... Proposed building additions include the mechanical room and the elevator shaft at the basement, the first and second floor structure between the main building and the east and west wings...."

Under "Review of Existing Structural Documents" the report states that there were no drawings to work from and that "The condition of the structure, the framing system, and the structural evaluation of the existing buildings are based on site observations of the exposed structural member and our past experience on similar buildings." In other words, Lam did not do any exploratory testing, such as having an assistant present to chip or drill into suspected concrete or tile column locations to determine what materials had been used or to determine if the exterior walls were load bearing clay tile, vintage for the era the building was built, or full concrete structural frame with concrete floors and concrete columns.

The Lam report stated: "Based on our site observation, the buildings were constructed of concrete slab, beams and columns as primary structural members. The exterior of the buildings were constructed with masonry and stone."

Nowhere in the report did Lam state that the exterior walls and pilaster columns were load bearing clay tile, because he had not conducted any tests.

The Lam report concluded "In general, we believe that the existing structures are in good condition for the ninety year old buildings and the proposed building additions should not affect the structural integrity of the buildings."

## 5.0 Discussion of the Collapse

Phase I of the Project entailed demolition of certain outer columns and support structures in order to construct improvements to the Main Building. Specifically, these improvements would be structures that linked newer building wings to the Main Building. During the course of the demolition of the outer support structures, portions of the main school building not designated for demolition, including large parts of the east wall and second story floor, collapsed. As a result of the east wall collapse, portions of the west wall and support columns in the basement suffered structural damage necessitating significant repairs.

The September 30, 2009 report prepared by Mr. Lam was based on cursory observations. The engineering report was to have included an "evaluation of the existing structure and discussion of the issues related to renovations of the existing buildings, and provide recommendations for the structural system of the proposed building additions." However, the report stated "The condition of the structure, the framing system, and the structural evaluation of the existing buildings are based on site observations of the exposed structural members and our past experience on similar buildings." Lam evidently did not do any exploratory testing, such as having an assistant present to chip or drill into suspected concrete or tile column locations to determine what materials had been used or to determine if the exterior walls were load bearing clay tile, vintage for the era the building was built, or full concrete structural frame with concrete floors and concrete columns as he ultimately evidently assumed.

The Lam report stated: "Based on our site observation, the buildings were constructed of concrete slab, beams and columns as primary structural members. The exterior of the buildings were constructed with masonry and stone....In general, we believe that the existing structures are in good condition for the ninety year old buildings and the proposed building additions should not affect the structural integrity of the buildings."

On or about September 22, 2010 a structural collapse occurred at the east end of the Main Building at the Project site. The contractor had been demolishing a narrow "link" building attached to the Main Building and adjacent to another building located further east. On October 18, 2010 another Lam-generated report stated: "The concrete slab and beams at the second floor and the roof are partially supported by masonry columns at the building corners and at the entrance corridor and partially supported by exterior load bearing masonry wall which is constructed of brick veneer and clay tiles." From his observations made after the

10