DESCRIPTION OF IMPROVEMENTS (continued)

| DESCRIPTION | QUANTITY | UNIT | UNIT COST | | | LABOR | MATERIAL | SUB |
| | | | L | M | S | | | |
|---|---|---|---|---|---|---|---|---|
| **TEXAS DESCON L.P.** McALLEN TEXAS | | | | PROJECT : | | THOMAS JEFFERSON EARLY COLLEGE | | |
| | | | | | | | | |
| **Wall Panels** | | | | | | | | |
| Stambaugh Bldg = 400 lf x 14' high = 5600 sf | 5600 | sf | 3 | 8 | | 16,800 | 44,800 | |
| Textbook Bldg = 570 lf x 13'-4" high = 7660 sf | 7660 | sf | 3 | 8 | | 22,950 | 61,280 | |
| | | | | | | | | |
| MBCI 16" Designer Series Kynar Horizontal w/ Trim and | | | | | | | | |
| Substrate hat channels | | | | | | | | |
| | | | | | | | | |
| **TOTAL** | | | | | | 39,750 | 106,080 | |
| | | | | | | | | 146,860 |

Sheet No. 6          Item:          FINISH

IMPROVEMENT SKETCH



Aguirre & Patterson, Inc.
Appraisal Report of the Stambaugh Building

SUBJECT INTERIOR FLOOR PLAN



GOOGLE EARTH AERIAL PHOTOGRAPH
(imagery date 12/25/2010)



SUBJECT PHOTOGRAPHS
(Source: ARO Architect's Demolition Photos Dated 2/6/2012)



Aguirre & Patterson, Inc.
Appraisal Report of the Stambaugh Building

SUBJECT PHOTOGRAPHS (continued)



SUBJECT PHOTOGRAPHS (continued)



Aguirre & Patterson, Inc.
Appraisal Report of the Stambaugh Building

SUBJECT PHOTOGRAPHS (continued)



SUBJECT PHOTOGRAPHS (continued)



Appraisal Report of the Stambaugh Building

ANALYSIS AND STATEMENT OF HIGHEST AND BEST USE

Definition and Scope

Highest and best use may be defined as the reasonable and probable legal use of vacant land or an improved property that is physically possible, appropriately supported, and financially feasible and that results in the highest value.

The theoretical focus of highest and best use analysis is on the potential uses of the land as though vacant. In practice, however, the contributory value of the existing improvements and any possible alteration of those improvements are also important in determining highest and best use and, by extension, in developing an opinion of the market value of the property.

The first definition applies specifically to the highest and best use of land or site as though vacant. It is to be recognized that in cases where a site has existing improvements on it, the highest and best use may very well be determined to be different from the existing use. The existing use may represent an interim use, which begins with the land value for the new highest and best use and adds the contributory value of the current improvements until the new highest and best use can be achieved.

An additional implication is that the determination of highest and best use results from the appraiser's judgment and analytical skill. The use determined from analysis represents an opinion, not a fact to be found. In appraisal practice the concept of highest and best use represents the premise upon which value is based.

The first type of highest and best use - highest and best use of land or a site as though vacant - assumes that a parcel of land is vacant or that it can be made vacant through the demolition of any improvements. The question to be answered in the analysis of this type of highest and best use is; if the land is (or was) vacant, what use should be made of it? That is, what type of building or other improvements (if any) should be constructed on the land? When a property's highest and best use can reasonably be forecast to change in the near future, the prevailing highest and best use is considered an interim use. For instance, the highest and best use of a farm in the path of urban growth would be interim use as a farm, with its future highest and best use as a potential residential subdivision. In certain cases, an appraiser's conclusion is that the highest and best use of a parcel of land is to be held vacant until price appreciates.

The second type of highest and best use - highest and best use of a property as improved - pertains to the use that should be made of the property, as it exists. Should a 30-year-old hotel building be maintained as it is, renovated, expanded, partly demolished, or any combination of

ANALYSIS AND STATEMENT OF HIGHEST AND BEST USE (continued)

these? Or should it be replaced with a use different in type or intensity? The use that maximizes the investment property's net operating income (NOI) on a long-term basis is its highest and best use.

<u>Application</u>

Highest and best use analysis builds on the conclusions of market/marketability analysis. The analysis of the land as though vacant focuses on alternative uses, with the appraiser testing each reasonably probable use for 1) legally permissibility 2) physically possibility, 3) financially feasibility, and 4) maximally productivity. In contrast, the appraiser applies the four tests in the analysis of the property as improved, but the focus is not on alternative uses but on three possibilities: continuation of the existing use, modification of the existing use, or demolition and redevelopment of the land. These criteria should usually be considered sequentially; it makes no difference that a use is financially feasible if it is physically impossible to construct an improvement or if such a use is not legally permitted. Only when there is a reasonable possibility that one of the prior unacceptable conditions can be changed is it appropriate to proceed with the analysis. (<u>The Appraisal of Real Estate</u>, Thirteenth Addition).

1) Legally Permissible: The subject property is zoned for school use by the City of Pharr. The surrounding land use patterns are mixed residential, commercial, and light industrial in nature.

2) Physically Possible: Although no land is included in the retrospective value opinion, it is assumed that sufficient site area would be available for either residential, commercial, or light industrial use.

3) Financially Feasible: The amount of net income, which can be produced, should exceed the combined operating expenses, financial expenses, and capital amortization.

As of the effective date of the retrospective value opinion, the subject building was not occupied and was used primarily for storage. With respect to the highest and best use, the appraisers must consider if marketable alternate uses are economically feasible considering the condition of the subject improvements.

Generally speaking, possible alternate uses for classroom buildings include but are not limited to offices, child and adult day care centers, charter schools, churches, fitness centers, rehab facilities, call centers, manufacturing buildings, or warehouse storage. The use that is most likely to

ANALYSIS AND STATEMENT OF HIGHEST AND BEST USE (continued)

be considered takes into consideration the existing condition of the improvements as of the effective date, and specifically the cost involved in converting the subject building to one of the alternate uses. In other words, the question to be answered with respect to highest and best use is "what use would a buyer consider?" In this regard, two options exist for a buyer: acquire the building in its existing condition and make no improvements, or invest capital to convert the building into a particular use.

As of the effective date, the building (although originally designed for classroom use) was unoccupied and primarily utilized as storage. Indeed, storage would be a use that would require little to no capital investment. This use would not require repair of the physical deficiencies nor would it require an asbestos abatement and remediation.

With regard to any of the other uses, however, the existing condition and more specifically the ACM and physical defects that are likely to have been discovered by a prudent buyer, would be taken into consideration. The cost for abatement was approximately $15,000.00. The cost to cure the physical defects was approximately $268,493.00. Combined these costs result in an estimated cost of approximately $26.51 per square foot. In addition to this cost, an investor looking to convert the subject building into say a day care center would need to invest this capital in addition to the cost for necessary finish-out of the interior into the desired alternate use.

It is the appraisers' opinion that given the age of the building such an investment would not be considered economically feasible. As such, uses that would require the repair of the physical deficiencies or ACM abatement are eliminated. Of the possible alternate uses for classrooms, the only option which would be considered financially feasible would be the use that requires no significant capital investment. As such, use as warehouse storage is considered financially feasible.

4) Maximally Productive: Among the financially feasible uses, the use that provides the highest rate of return, or value, is the highest and best use. The appraiser estimates the maximally productive use of the subject is for warehouse storage use.

Highest & Best Use - As Improved

It is the appraisers' opinion that given the current condition of the building, the highest and best use of the subject building would be for warehouse storage use.

APPRAISAL PROCESS

An appraisal is an estimate of value; it is an opinion of value. Its accuracy depends on the basic competence and integrity of the appraiser and on the soundness and skill by which he processes the data. The professional appraiser seeks current facts and seeks to be practical. The appraiser's opinion must be without bias.  As with other types of "markets" the real property appraiser does not make the market, but rather interprets the market.

The three classic approaches to value, namely the Cost Approach, the Income Capitalization Approach, and the Sales Comparison Approach, each discussed separately below, are all comparative approaches in that the basic data comes from direct comparisons in the market, indirect comparisons in the market, and/or the appraiser's judgment which is based on market experience.

In the Cost Approach, the cost to reproduce the property at the date of the appraisal, less an appropriate allowance for depreciation (physical deterioration, functional obsolescence, and economic obsolescence) is made by market comparisons of cost and depreciation. The Cost Approach is frequently applied to special-purpose or specialty properties, or other properties that are not frequently exchanged in the market or for which there is not sufficient comparable market data. *The subject is not new construction or special purpose, and deprecation exceeds 75%.  As such, the Cost Approach is not considered to provide a reliable indication of value.*

In the Income Capitalization Approach, the projected operating experience is estimated from comparable market data. Gross rental schedules, vacancy and collection losses, fixed expenses, operating expenses, and reserves are estimated and result in an estimate of net income.  This net income is converted to an estimate of value by a capitalization process. The capitalization rate (interest rate and recapture rate) is based on demonstrated rates found in the market.  The method and technique of capitalization is determined by the nature of the property in the market.

In the Sales Comparison Approach, the subject property is compared to sales of properties within the similar highest and best use.  The sales are analyzed to bring out similar characteristics to common denominators. Such common denominators may include number of units, number of rooms, square feet, front feet or a gross rent multiplier. Where necessary, adjustments are made to allow for differences of date of sale, location, size of property, and other factors.  The Sales Comparison Approach is developed within this appraisal.

Aguirre & Patterson, Inc.
Appraisal Report of the Stambaugh Building

INCOME CAPITALIZATION APPROACH

Definition and Scope

The Income Capitalization Approach is defined as follows:   "The income capitalization approach to value consists of methods, techniques, and mathematical procedures that an appraiser uses to analyze a property's capacity to generate benefits (i.e., usually the monetary benefits of income and reversion) and convert these benefits into an indication of present value."[4] The process of discounting income expectancies to a present worth estimate is called "capitalization". This present worth estimate, the result of the capitalization process, is the amount that a prudent, typically informed purchaser would be willing to pay at a fixed time for the right to receive the income stream produced by a particular property.

Steps in Applying the Income Capitalization Approach

In order to produce a reliable value estimate through the Income Capitalization Approach, the appraiser will attempt to develop the following four basic steps:

1.    Estimate the Potential Gross Income;
2.    Estimate allowances for vacancies and other losses to determine the Effective Gross Income;
3.    Estimate the Operating Expenses to determine the Net Operating Income; and
4.    Select the appropriate capitalization process in order to determine the final value estimate.

Contract Rent

The subject property is owner occupied.

Comparable Rental Data

A survey of comparable properties is considered appropriate.   The following rent comparables represent the most recent, most similar rents available and are presented in order to estimate the market rent for the subject property.

---

[4] Appraisal Institute, *The Appraisal of Real Estate*, Thirteenth Edition, 2008, pg 445.

INCOME CAPITALIZATION APPROACH (continued)



COMPARABLE RENT #1

Location: 1108 Albrad Avenue, Pharr, Texas

Description: An approximate 12,000 square foot grade level metal warehouse partitioned for dual-tenant use. The improvements were constructed in approximately 1998.  Overall average rent is $0.38 per square foot on a triple net lease basis. LTB ratio 3.7:1.

Lessor: JMA Enterprises, Inc.

Lessee: ESP Petro Chemicals, Inc. and Odessa Pumps and Equipment, Ltd.

INCOME CAPITALIZATION APPROACH (continued)



RENT COMPARABLE #2

Location:  1209 E. Jasmine Avenue, McAllen, Texas

Description:   Single-story, block and steel multi-tenant office/warehouse; built new in 2001; approximately 7,800 square feet total; 35% office area; renting for an average of $0.63 per square foot per month on a gross lease basis. Land to building ratio = 2.8:1.

Lessor:  Juan Manuel Garza

Lessee:  Advantage DME, International Company of Marble, and Interceramic Tile & Stone.

INCOME CAPITALIZATION APPROACH (continued)



RENT COMPARABLE #3

Location:  920 Ferguson Avenue, Pharr, Texas

Description:  An approximately 6,000 square foot grade-level metal warehouse; effective age of 10 years; average condition and quality; currently renting for $0.58 per square foot per month on a triple net lease basis. Land to building ratio = 6.4:1.

Lessor:  Wilkins Investments, Ltd.

Lessee:  JD Krane Flooring

INCOME CAPITALIZATION APPROACH (continued)

Comparable Rent Grid

Subject: The Stambaugh Building

| Adjustment | Subject | Rent 1 | Rent 2 | Rent 3 |
|---|---|---|---|---|
| Rent/SF | | $0.38 | $0.63 | $0.58 |
| SF Size | 10,692 | 12,000 0% | 7,800 0% | 6,000 0% |
| Age | 30 Eff. | 10 Eff. -20% | 10 Eff. -20% | 10 Eff. -20% |
| Quality | 100% climate control | 23% CC 10% | 35% CC 5% | 35% CC 5% |
| Lease | | NNN 0% | NNN 0% | NNN 0% |
| Net Adjustments | | -10% | -15% | -15% |
| Adj. Value/Sq Ft | | $0.34 | $0.54 | $0.49 |

Explanation of Adjustments

    Three comparable facilities are presented.  The rents presented indicate an adjusted rental rate between $0.34 to $0.54 per square foot per month on a triple net lease basis.   Adjustments are based on paired analysis tempered by the appraisers' knowledge of the market area.  Age is adjusted based on the effective age of the subject and comparables at 1% per year.  Quality adjustment recognizes overall construction quality and additional climate control area.  The comparables are considered equal in other factors.

Aguirre & Patterson, Inc.
Appraisal Report of the Stambaugh Building

INCOME CAPITALIZATION APPROACH (continued)

Greatest weight is accorded the approximate mean of the range, with $0.44 per square foot on a triple net lease basis deemed reasonable. The subject's potential gross income is estimated as follows:

| Subject Property | | | | | |
|---|---|---|---|---|---|
| 10,692 | Sq. Ft. @ | $0.44 | per Sq. Ft. = | $4,704.48 | |
| | | | | x 12 months | |
| Annual Potential Gross Income | | | | $56,453.76 | |

## Allowance for Vacancy and Collection Loss

Vacancy and collection losses for the subject are estimated at 10%. Rates for industrial space throughout the area are reported at a range from 5% to 15% by NAI Rio Grande Valley and RealtyRates.com.

## Operating Expenses

A historical accounting of actual expenses was not available. The appraisers have conducted a market study of operating expenses for similar facilities. In a triple net lease scenario, tenants pay a base rent, utilities, taxes, and insurance. The lessor is responsible for major exterior maintenance, legal/accounting fees, vacancy/loss collection, and reserves for replacements. The operating expenses are listed as follows:

Taxes – Annual taxes for the subject are estimated based assessments for properties of similar age with similar highest and best use. Taxes are the responsibility of the tenant in a triple net lease scenario. An allowance of $800.00 per year recognizes the vacancy factor.

Insurance – Fire and extended coverage insurance is primarily the responsibility of the tenant in a net lease scenario and is considered as such in the appraisal of the subject. Insurance is estimated based on an estimated annual cost of approximately $2,500.00 per year. An allowance of $250.00 per year is deemed reasonable recognizing the vacancy factor.

Property Management & Administration - The management fee is estimated to be approximately 5% of the effective gross income. Property managers in the area typically charge from 2% to 10% for management fees, with the high end usually charged for smaller properties. Management fees are estimated based on investment potential from an absentee landlord position.

Maintenance – This item is an allowance for exterior repairs, needed maintenance items, yard care etc. and is typically negotiated in as many different manners as there are leases. An allowance of $2,5000.00 is deemed reasonable.

INCOME CAPITALIZATION APPROACH (continued)

Utilities -- These expenses are estimated for water/sewer/trash collection.  Typically the responsibility of the tenant, an allowance of $1,200.00 is considered for the vacancy factor.

Legal/Accounting - This expense is estimated for bookkeeping, etc. and is based on competing comparable facilities.  An allowance of $1,000.00 per year is within a range considered to be typical for this item.

Reserves for Replacements - This account is established to replace short-lived items of real estate such as roof, flooring, ceilings, plumbing, electrical, parking, air conditioners, etc. Reserves for replacements are estimated at $0.30 per square foot or $3,200.00 per year based survey data obtained through RealtyRates.com.

Projected Operating Statement

| | | | | |
|---|---|---|---|---|
| Potential Gross Annual Income | | | $ | 56,453.76 |
| Less Vacancy & Collection Loss | | 10% | - | 5,645.38 |
| Effective Gross Income | | | $ | 50,808.38 |
| Less Annual Expenses: | | | | |
| Taxes | | $ | 800.00 | |
| Insurance | | | 250.00 | |
| Management | 5% | | 2,540.42 | |
| Maintenance | | | 2,500.00 | |
| Utilities | | | 1,200.00 | |
| Legal/Accounting | | | 1,000.00 | |
| Reserves for Replacements | | | 3,200.00 | |
| Total Expenses | 22.6% | | $ | 11,490.42 |
| Net Operating Income | | | $ | 39,317.96 |

Capitalization Analysis

Capitalization is the process of discounting net operating income to a present worth estimate. The capitalization rates at which income expectancies are discounted are influenced by the thinking and action of investors in the market place and conditions in the mortgage market.

The purchaser-investor must be compensated for giving up the use of his funds, for not choosing alternative investment opportunities, for undertaking the burdens of investment management, and for assuming the risks that actual income receipts will not materialize as forecasted.  This

INCOME CAPITALIZATION APPROACH (continued)

necessary compensation is reflected in rates of capitalization or discounting determined largely by market competition. Because income receipts are normally forecast for a finite period, the purchaser-investor seeks a competitive return on the investment (representing the required compensation enumerated above) and a return of capital at the end of the projection period.

An overall rate of capitalization is the annual rate that expresses the relationship between net operating income and sale price. It contains provisions for a return on investments as well as provisions for capital recovery. The overall rate is utilized in "Direct Capitalization" which is applying the rate directly to the net operating income. The result is a value indication.

An overall capitalization rate may be developed through various techniques. The two most frequently used by this appraiser are: (1) Comparative or Market Method and (2) Yield Investment Method.

Whenever market data permits, it is best to avoid complex methods of income capitalization and use instead the Comparative or Market Method with an Overall Rate. The data requirements for the use of the Market Method of Capitalization are as follows:

1.   Sale prices of similar competitive properties sold to the same type of purchaser-investor in arm's length open market transactions under market conditions similar to those affecting the subject property;

2.   Properties with essentially the same physical and location characteristics as the subject (age, condition, site-improvements, etc.);

3.   Similar terms of financing;

4.   Similar terms of sale;

5.   Income streams with the same risk and stability characteristics and the same income projection; and,

6.   A similar capital recovery period and method of capital recovery.

Because of the potential complexities of Income Capitalization Analysis as a mechanical process, it is sometimes possible to lose sight of the fact that the basic valuation formula is both simple and straightforward. Essentially, investment analysis boils down to an inter-relation of three essential variables. They are as follows:

$$I = \text{Net Operating Income}$$

$$R = \text{Overall Rate (Capitalization Rate)}$$

Aguirre & Patterson, Inc.
Appraisal Report of the Stambaugh Building

INCOME CAPITALIZATION APPROACH (continued)

$V$ = Value

The relation among these variables is as follows:

$$R = \frac{I}{V}$$

All other complications arise from the frequent necessity of deriving R indirectly and in part. However, it is possible to develop R directly through market evidence or the Direct Method of Capitalization. Aside from producing a value estimate more readily explained to a layman, the appraiser minimizes the risk of technical mechanical errors in calculations.

Mortgage and Equity Band of Investment Capitalization

Sometimes an overall capitalization rate cannot be derived directly from the market. Stringent data requirements must be met and most properties are purchased with debt and equity capital. An overall capitalization rate can be estimated if you satisfy the market return requirements of both debt (mortgage) and equity (owner's interest after all claims and liens have been satisfied). Lenders anticipate loaning with a competitive interest rate commensurate with the perceived risk of the investment of they will not make funds available. Lenders generally require that the loan principle be repaid through periodic amortization payments. Equity investors anticipate receiving a competitive equity cash return. The return is commensurate with the perceived risk or they will invest their capital elsewhere.

The mortgage capitalization rate ($R_M$) is the ratio of annual debt service to the principal amount of the mortgage loan. The rate established at inception of a mortgage is called the mortgage constant. The annual mortgage constant for a new loan is calculated by multiplying each period's payment by the number of payments per year and then dividing this amount by the amount of the loan. It should be noted that the mortgage capitalization rate ($R_M$) differs from the mortgage interest rate ($Y_M$).

The mortgage capitalization rate is a function of the interest rate, the frequency of amortization, and the amortization term of the loan. It is the sum of the interest rate and the sinking fund factor.

The equity investor seeks a cash return. The rate used to capitalize equity into income is called the equity capitalization rate ($R_E$). It is the ratio of the annual equity dividend to the amount of equity investment. For appraisal purposes, a property's equity capitalization rate is the anticipated

INCOME CAPITALIZATION APPROACH (continued)

cash flow to the equity investor for the first year of the projected period divided by the initial equity investment.

The overall capitalization rate must satisfy both the mortgage capitalization rate requirement of the lender and the equity dividend requirement of the equity investor. Mortgage-equity analysis can be considered as a composite rate, weighted in proportion to the total property investment represented by debt and equity. The overall capitalization rate is a weighted average of the mortgage capitalization rate ($R_M$) and equity capitalization rate ($R_E$). The loan-to-value ratio (M) represents the loan or debt portion of the property and the equity ratio (E) represents the equity portion of the property. The sum of M and E is 100% or 1.00.

Typical mortgage terms and conditions may be obtained by surveying lenders active in the market area. Equity capitalization rates are derived from comparable sales by dividing the annual equity dividend of each sale by the equity investment. The equity capitalization rate used to capitalize the subject property's equity dividend ultimately depends on the appraiser's judgment. The appraiser surmises how the investors perceive the relationship between market value and investment value. This is preferably by interviewers with local investors and developers.

When the mortgage and equity capitalization rates and ratios are known, an overall capitalization rate may be derived with the band-of-investment, or weighed-average techniques using the following formulas:

- Mortgage Component = Mortgage Ratio (M) X Mortgage Rate ($R_M$)
- Equity Component = Equity Ratio (E) X Equity Capitalization Rate ($R_E$)
- Overall Ratio ($R_O$) = Mortgage Component + Equity Component or $R_O = (M \times R_M) + (E \times R_E)$

  (*The Appraisal of Real Estate*; Thirteenth Edition; Appraisal Institute; pages 505-507.)

In the case of the subject property, the overall capitalization rate is calculated applying the band-of-investment technique using characteristics derived interviews with local developers and investors, from comparable sales, from Korpacz Real Estate Investor Survey, or from RealtyRates.com. Current indications are presented as follows:

INCOME CAPITALIZATION APPROACH (continued)

| Item | Input | | | | OAR |
|---|---|---|---|---|---|
| **RealtyRates.com INVESTOR SURVEY - 2nd Quarter 2014** | | | | | |
| **INDUSTRIAL - WAREHOUSES & DISTRIBUTION CENTERS** | | | | | |
| **Minimum** | | | | | |
| Spread Over 10-Year Treasury | 0.94% | DCR Technique | 1.15 | 0.047573 | 0.90 | 4.92 |
| Debt Coverage Ratio | 1.15 | **Band of Investment Technique** | | | |
| Interest Rate | 3.66% | Mortgage | 90% | 0.047573 | 0.042815 |
| Amortization | 40 | Equity | 10% | 0.074456 | 0.007446 |
| Mortgage Constant | 0.047573 | OAR | | | 5.03 |
| Loan-to-Value Ratio | 90% | **Surveyed Rates** | | | 4.77 |
| Equity Dividend Rate | 7.45% | | | | |
| **Maximum** | | | | | |
| Spread Over 10-Year Treasury | 3.35% | DCR Technique | 1.90 | 0.101662 | 0.60 | 11.59 |
| Debt Coverage Ratio | 1.90 | **Band of Investment Technique** | | | |
| Interest Rate | 6.06% | Mortgage | 60% | 0.101662 | 0.060991 |
| Amortization | 15 | Equity | 40% | 0.153837 | 0.061535 |
| Mortgage Constant | 0.101662 | OAR | | | 12.25 |
| Loan-to-Value Ratio | 60% | **Surveyed Rates** | | | 11.64 |
| Equity Dividend Rate | 15.38% | | | | |
| **Average** | | | | | |
| Spread Over 10-Year Treasury | 2.15% | DCR Technique | 1.39 | 0.065950 | 0.75 | 6.85 |
| Debt Coverage Ratio | 1.39 | **Band of Investment Technique** | | | |
| Interest Rate | 4.86% | Mortgage | 75% | 0.065950 | 0.049462 |
| Amortization | 28 | Equity | 25% | 0.110177 | 0.027544 |
| Mortgage Constant | 0.065950 | OAR | | | 7.70 |
| Loan-to-Value Ratio | 75% | **Surveyed Rates** | | | 8.46 |
| Equity Dividend Rate | 11.02% | | | | |

*1st Quarter 2014 Data                                    Copyright 2014 RealtyRates.com ™

The following data is utilized to develop the capitalization rate using the band of investment technique.

- Mortgage ratio: 70%

- Interest rate: 5.75%

- Term: 20 year amortization, paid monthly

- Mortgage Rate or Mortgage Constant: 0.084250

- Equity Capitalization Rate: 11%

Aguirre & Patterson, Inc.
Appraisal Report of the Stambaugh Building

INCOME CAPITALIZATION APPROACH (continued)

The capitalization rate is calculated as follows:

| Mortgage Ratio | Mortgage Rate | | |
|---|---|---|---|
| 0.70 | x  0.084250 | | 0.05898 |
| Equity Ratio | Equity Capitalization Rate | | |
| 0.30 | x  0.110 | + | 0.03300 |
| Indicated Capitalization Rate | | | 0.09198 |
| | | ROUNDED TO | 9.2% |

Estimated Land Component

The comparable rents all include land as a component of the rent.  As such, the estimated market rent also includes land contribution.  In order to estimate the value of the subject building only, the land component must be projected and the value of the same subtracted to arrive at building-only.

The amount of land necessary to service the subject improvements is based on land to building ratios that are typical of the market.   The comparable data presented indicate the following land to building ratios:

|  |  |  |
|---|---|---|
| Rent #1 | 3.7 | : 1 |
| Rent #2 | 2.8 | : 1 |
| Rent #3 | 6.4 | : 1 |
| Sale #1 | 6.8 | : 1 |
| Sale #2 | 3.4 | : 1 |
| Sale #3 | 3.7 | : 1 |

Greatest weight is accorded the median of the data set, with a land to building ratio of 3.7 deemed reasonable.  Utilizing this ratio the estimated land required to service the subject building is calculated as follows:

$$10,692 \text{ sq. ft.} \quad \times \quad 3.7 \quad = \quad 39,560 \text{ sq. ft}$$

The appraisers conducted a market search for comparable industrial lot sales of between 20,000 square feet and 60,000 square feet within the PSJA area.  The following three sales were discovered to have occurred in the two years prior to the effective date of this appraisal:

| Address | Sale Date | Use | SP | Size | Price/SF |
|---|---|---|---|---|---|
| 4901 Fir, Pharr, TX | 3/16/2010 | Industrial | 75,000 | 40,102 | $ 1.87 |
| 5804 N. Gumwood, Pharr TX | 4/19/2010 | Industrial | 83,000 | 40,040 | $ 2.07 |
| 10004 BR Becker Ln, Pharr, TX | 8/16/2011 | Industrial | 80,000 | 33,970 | $ 2.36 |

Aguirre & Patterson, Inc.
Appraisal Report of the Stambaugh Building

7
## INCOME CAPITALIZATION APPROACH (continued)

The land sale data indicates a range from $1.87 to $2.36 per square foot for industrial lots. With greatest weight accorded the mean of the range, the estimated land component value is calculated as follows:

Land Required to Service Subject Bldg      Est. Price / sq. ft.

39,560     sq. ft.      x      $2.11 / sq. ft. =   $83,472.44

## Estimated Market Value By Income Capitalization Approach

The subject's estimated market value by the Income Capitalization Approach is calculated as follows and abstracts the estimated land component to arrive at the estimated value for the building only:

| | | |
|---|---|---|
| Net Operating Income | $ | 39,317.96 |
| Divided by Cap. Rate | / | 9.2% |
| Subtotal | $ | 427,369.18 |
| Less Est. Land Necessary to Service Subject Building | - | 83,472.44 |
| Est. Retrospective Market Value by Income Cap. Approach | $ | 343,896.74 |
| ROUNDED TO | $ | 345,000.00 |

Aguirre & Patterson, Inc.
Appraisal Report of the Stambaugh Building

## SALES COMPARISON APPROACH

### Definition and Scope

"In the sales comparison approach, the appraiser develops an "In the sales comparison approach, the appraiser develops an opinion of value by analyzing closed sales, listings, or pending sales of properties that are similar to the subject property. The comparative techniques of analysis applied in the sales comparison approach are fundamental to the valuation process. Estates of market rent, expenses, land value, cost, depreciation, or other value parameters may be derived in the other approaches to value using comparative techniques. Similarly, conclusions derived in the other approaches are often analyzed in the sales comparison approach to estimate the adjustments to be made to the sale prices of comparable properties.

"In the sales comparison approach, an opinion of market value is developed by comparing properties similar to the subject property that have recently sold, are listed for sale, or are under contract (i.e., for which purchase offers and a deposit have been recently submitted). A major premise of the sales comparison approach is that an opinion of market value of a property can be supported by studying the market's reaction to comparable and competitive properties."[5]

### Steps in Applying the Sales Comparison Approach

In order to establish an indication of market value for the subject property, an orderly process takes place allowing the appraiser to carefully analyze the data gathered and form this data into an indication of market value for the property being appraised. This analysis follows a logical sequence whereby:

1.   The appraiser finds properties similar to the subject for which sales, listings, contracts are available.

2.   Comparables are qualified by the appraiser when he confirms the price, terms, motivation, or authenticity of each comparable.

3.   Each comparable is then compared to the subject property giving consideration to the time of sale, location influences, and physical characteristics.

4.   Each comparable is then evaluated and adjusted as being more, less, or equal in value to the subject property, based on each of the three broad classifications mentioned in Paragraph #3.

---

[5] Appraisal Institute, *The Appraisal of Real Estate*, Thirteenth Edition, 2008, Pg. 297.

## SALES COMPARISON APPROACH (continued)

5.    After comparing the comparables to the subject property and making adjustments for any major dissimilarities, each comparable will then indicate a probable selling price. From these indicated values a final value estimate will be correlated.

Comparable Sales

      The appraisers completed a thorough market search for recent sales; however, very few recent sales are available. The three best available and most similar comparable sales are presented with analysis to follow.

## SALES COMPARISON APPROACH (continued)



COMPARABLE SALE #1

Type of Property: Office/Warehouse
Location: 906 Owassa Road, Pharr, Texas
Date of Sale: April 14, 2011
Consideration: $360,000.00
Improvements:   An approximate 6,000 square foot single-story pre-engineered metal panel
        office/warehouse office; 1,200 square feet of office (20%) and 4,800 square feet of
        warehouse; completed in 2007. Condition and construction are considered average. Grade
        level. Lot size 40,560 square feet. Land to building ratio = 6.8:1
Legal Description:   Lot 15, Steel Horse Industrial Park Subdivision, City of Pharr, Hidalgo County,
        Texas
Grantor: El Norte Holdings
Grantee: Midwest Inspection Services
Confirmation: Agent/MLS#140400; HCDR Doc. No. 2198043
Units of Comparison:
        Price/SF: $56.40

SALES COMPARISON APPROACH (continued)



COMPARABLE SALE #2

Type of Property: Office/Warehouse
Location: 400 E. Pecan Boulevard, McAllen, Texas
Date of Sale: November 22, 2010
Consideration: $470,000.00
Terms: Cash to Seller
Improvements:   An approximate 10,500 square foot single-story, grade-level, pre-engineered
        metal panel office/warehouse office; 1,830 square feet of office (21%) and 8,670 square
        feet of warehouse; completed in 2003. Condition and construction are considered average.
        Lot size is 35,860 square feet.
Legal Description: Lot B, Eagle Place Subdivision, City of McAllen, Hidalgo County, Texas
Grantor: SANB
Grantee: Box Family LP, Ltd.
Recording: Document #2156731, HCDR
Verification: Agent/Deed
Unit of Comparison:
        Price Per Square Foot: $44.76

SALES COMPARISON APPROACH (continued)



COMPARABLE SALE #3

Type of Property:  Office/Warehouse
Location:  3102 Hibiscus, Pharr, Texas
Date of Sale:  March 15, 2012
Consideration:  $215,000.00
Terms:  Cash to Seller
Improvements:  An approximate 5,000 square foot single-story, grade-level, pre-engineered metal
    panel office/warehouse office; 800 square feet of office (16%) and 4,200 square feet of
    warehouse; completed in 2005.  Condition and construction are considered average.  Lot
    size is 18,482 square feet.
Legal Description: Lot 14, 3100 Sugar Subdivision, City of Pharr, Hidalgo County, Texas
Grantor:  Vantage Bank Texas
Grantee:  Jan R. Koepke
Recording:  Document #2290227, HCDR
Verification:  Agent MLS#153612/Deed
Unit of Comparison:
    Price Per Square Foot:  $43.00

SALES COMPARISON APPROACH (continued)

Comparable Adjustment Grid

| Adjustment | Subject | Sale 1 | Sale 2 | Sale 3 |
|---|---|---|---|---|
| Total Sales Price | | $360,000 | $470,000 | $215,000 |
| Less Est. Land Value | | $80,000 | $107,000 | $40,000 |
| Sales Price Building Only | | $280,000 | $363,000 | $175,000 |
| Price/SF (land abstracted) | | $46.67 | $34.57 | $35.00 |
| Financing Terms | | Cash 0 | Cash 0 | Cash 0 |
| Conditions of Sale | | Arms Length 0 | Arms Length 0 | Arms Length 0 |
| Market Conditions | | Apr-11 0 | Nov-10 0 | Mar-12 0 |
| Adjusted Price/Sq Ft Building Only | | $46.67 | $34.57 | $35.00 |
| Location | | Owassa N/A | Pecan N/A | Hibiscus N/A |
| Size | 10,692 | 6,000 -5% | 10,500 0% | 5,000 -5% |
| Age | 20 Eff. | 4 Eff. -16% | 7 Eff. -13% | 7 Eff. -13% |
| Quality | 100% CC | 20% CC 10% | 21% CC 10% | 16% CC 10% |
| Net Adjustments | | -11% | -3% | -8% |
| Adj. Value/Sq Ft Building Only | | $41.53 | $33.53 | $32.20 |

]

SALES COMPARISON APPROACH (continued)

Comparable Sales Analysis

The comparables presented represent the best available data and are considered to provide a reliable indication of value. Adjustments are based not only on matched paired analysis but on the appraisers' knowledge and experience. Abstracting the land component eliminates the need for location adjustments. Size adjustment recognizes the market phenomenon that smaller buildings command a higher price per square foot. Age is adjusted at 1% per year in effective age difference. Quality adjustment recognizes overall construction quality and additional climate control area.

The comparable sales presented produce the following adjusted values for the subject for building area only:

Comparable #1 ------------- $ 41.53 per square foot

Comparable #2 ------------- $ 33.53 per square foot

Comparable #3 ------------- $ 32.20 per square foot

Greatest weight of consideration is given the lower end of the range due to effective age, with $33.00 per square foot deemed reasonable.

Estimated As Is Value By Sales Comparison Approach

The subject's estimated as is market value by the Sales Comparison Approach is calculated as follows:

| Subject: | | | | | | |
|---|---|---|---|---|---|---|
| | 10,692 | Sq Ft @ | $33.00 | /sf = | $ | 352,836.00 |
| | | | | ROUNDED TO | $ | 353,000.00 |

Aguirre & Patterson, Inc.
Appraisal Report of the Stambaugh Building

CORRELATION

The approaches to value have been considered and the estimated "as is" market value indications, excluding FF&E, is as follows:

| | |
|---|---|
| Cost Approach | Not Applicable |
| Income Capitalization Approach | $ 345,000.00 |
| Sales Comparison Approach | $ 353,000.00 |

The Cost Approach is that approach in appraisal analysis, which is based on the proposition that the informed purchaser would pay no more than the cost of producing a substitute property with the same utility as the subject property. The Cost Approach, in effect, will tend to set the price which specific users would pay for its' specific purposes, reflecting the extent to which the property contributes to the utility or profitability of that particular enterprise. Due in large part to the subject age and depreciation, the cost approach is not considered applicable as it would not provide a reliable indication of market value.

The Income Capitalization Approach estimates gross income and expenses based on actual projection data, which is abstracted from the market. The net profit is then capitalized into value by use of an overall rate, which is also abstracted from the market. This approach, in effect, indicates what funds a typically informed investor would commit for the right to receive the benefits provided by the subject under the present market conditions. This approach indicates a market value of approximately $345,000.00 for the subject property.

Greatest weight is accorded the Sales Comparison Approach which allows the appraisers a more precise method of abstracting the land value from each comparable sales price rather than subtracting the subject's hypothetical land contribution. Is a process of analyzing sales of similar recently sold properties in order to devise an indication of the most probable sales price of the property being appraised. The reliability of this technique is highly dependent upon the degree of comparability. The comparable sales utilized are considered to have reasonable comparability. Nevertheless, there is a lack of more recent sales that are similar in size, quality and location; therefore, the Comparable Sales Approach is presented to lend support to the final value estimate.

Aguirre & Patterson, Inc.
Appraisal Report of the Stambaugh Building

CERTIFICATE OF VALUE

It is the appraisers' opinion that the retrospective market value estimate, as of February 1, 2012, excluding FF&E, was as follows:

THREE HUNDRED AND FIFTY-THREE THOUSAND DOLLARS

($353,000.00)

Based upon the appraisers' analysis of past events assuming a competitive and open market, the appraisers estimate a reasonable marketing period for this type of property at the market value estimated in this report to not exceed twenty-four months.

Based upon the appraisers' analysis of past events assuming a competitive and open market, the appraisers estimate a reasonable exposure period for this type of property at the market value estimated in this report would not have exceeded twenty-four months.

Joe Patterson, MAI, SRA
President, TX-1321595-G

Irene B. Thompson
Associate, TX-1336175-G

ADDENDUM

𝔗𝔢𝔵𝔞𝔰 𝔄𝔭𝔭𝔯𝔞𝔦𝔰𝔢𝔯 𝔏𝔦𝔠𝔢𝔫𝔰𝔦𝔫𝔤 𝔞𝔫𝔡 ℭ𝔢𝔯𝔱𝔦𝔣𝔦𝔠𝔞𝔱𝔦𝔬𝔫 𝔅𝔬𝔞𝔯𝔡

P.O. Box 12188 Austin, Texas 78711-2188

Certified General Real Estate Appraiser

Number:      TX 1321595 G

Issued:      10/25/2013          Expires:      12/31/2015

Appraiser:      JOSEPH WILLIAM PATTERSON III

Having provided satisfactory evidence of the qualifications required by the Texas Appraiser Licensing and Certification Act, Texas Occupations Code, Chapter 1103, is authorized to use this title, Certified General Real Estate Appraiser.

Douglas E. Oldmixon
Commissioner

QUALIFICATIONS OF THE APPRAISER
JOSEPH W. PATTERSON, III

State Licensing and Certification
Licensed and certified by the State of Texas as a General Real Estate Appraiser:  License Number TX-1321595-G (Date of Issue: October 25, 2013and Date of Expiration: December 31, 2015)

Professional Designations
Member of Appraisal Institute with MAI and SRA Designations

Education
Bachelor of Business Administration from Baylor University, Waco, Texas

Graduate Study at Baylor University Law School, Waco, Texas

Continuing Education in Real Estate and Appraising at University of Houston, University of North Carolina, San Diego University, University of Colorado, University of Illinois, Mills College (Oakland), and University of Texas Pan American

Professional Affiliations
Member of the McAllen Board of Realtors

Member of the Texas Association of Realtors

Member of the National Association of Realtors

Professional Offices Held
President of Rotary Club of McAllen, Texas, Chapter #2076, 1996-1997

President of the Society of Real Estate Appraiser, Rio Grande Valley, Chapter #144 – 1983-1984

Board of Directors of the Society of Real Estate Appraiser, Waco, Texas, Chapter #145 – 1975-1977

Board of Directors of the Society of Real Estate Appraiser, Rio Grande Valley, Chapter #144 – 1976-1991

Board of Directors of the American Institute of Real Estate Appraisers, South Texas Chapter #29 – 1986-1991

Teaching Experience
Instructor for Real Estate Appraising and Real Estate Law at Hill Junior College, Hillsboro, Texas

Substitute Instructor for Real Estate Principle, Real Estate Law, Real Estate Finance, Real Estate Appraising and Business

QUALIFICATIONS OF THE APPRAISER (continued)
JOSEPH W. PATTERSON III

Professional Experience
Joe Patterson began his appraisal experience in 1971 as an independent appraiser with Smith Real Estate Association in Waco, Texas for five years.  He was also a staff appraiser for First Federal Savings and Loan Association in Waco, Texas for one year.  He then associated himself with D.U. Buckner, a local MAI, for seven years as an independent fee appraiser.  In 1986 he opened his own office, J.W. Patterson and Associates, and currently covers the Rio Grande Valley area from his McAllen office.

As an appraiser for the past 43 years, he has worked on the following types of properties:  single family residences, duplexes, apartments, manufacturing properties, shopping centers, discount houses and supermarkets, hospitals, hotels and motels, funeral homes, restaurants, developments, churches, schools, medical clinics, warehouses, banks, farms, ranches, bowling alleys, convention centers, grain elevators, gins, condominium projects, food processing plants, civilian airport facilities, and "FIRREA" affordable housing program.  Other assignments include partial taking, eminent domain, easements, and partial interests.

Joe has also served as the guest speaker and lecturer for numerous local service clubs, professional organizations and schools, including University of Texas Pan American.

Recently Completed Course Studies
USPAP Update 2012/2013, No. 101, offered by the Columbia Institute, Austin, Texas, January 18, 2013
Appraising in a Depressed Market, No. 125, offered by the Columbia Institute, Austin, Texas, January 16, 2013
Interagency Rules of Banks and Credit Unions, No. 011, offered by the Columbia Institute, Austin, Texas, January 15, 2013
Write It Right, No 148, offered by the Columbia Institute, Austin, Texas, January 17, 2013
Online Appraisal Curriculum Overview – Residential, offered by the Appraisal Institute, January 14, 2013,
Online Business Practices and Ethics, offered by the Appraisal Institute, December 12, 2012
Report Writing-the UAD, No. 120, offered by the Columbia Institute, Harlingen, Texas, August 2, 2011
The Mortgage Loan System, No. 015, offered by the Columbia Institute, Harlingen, Texas, August 1, 2011
Practice of Appraisal Review – FHA Protocol, No. 145, offered by the Columbia Institute, Harlingen, Texas, February 2011
USPAP Update 2010-2011, No. 101, offered by the Columbia Institute, Harlingen, Texas, March 2011
USPAP Update No. 101, September 2009
Identifying Relevant Characteristics Course 019 – The Columbia Institute, Sept. 2009
FHA Today Course 114 – The Columbia Institute, March 2009
Fannie Mae Today Course 116 – The Columbia Institute, March 2009
Basic Appraisal Principles, The Appraisal Institute, North Texas Chapter, May 2007
Scope of Work and Appraiser Due Diligence, No. 36, The Columbia Institute, April 2007
USPAP Update No. 101, The Columbia Institute, April 2007
Fundamental of Appraisal Review No. 105, The Columbia Institute, April 2007

QUALIFICATIONS OF THE APPRAISER (continued)
JOSEPH W. PATTERSON III

FHA, the URAR & the 1025 No. 104, The Columbia Institute, April 2007
Business Practices and Ethics, The Appraisal Institute, February 2007
Uniform Standards of Professional Practice, USPAP Update, The Appraisal Institute, Houston Chapter,
September 2005
Litigation Skills for this Appraiser, The Appraisal Institute Houston Chapter, Sept. 2005
Ethics & Special Purpose Properties, The Appraisal Institute, September 2005
Appraising from Blueprints and Specifications, The Appraisal Institute Online Continuing Education
Program, Chicago, Illinois, February, 2005
Uniform Standards of Professional Practice, USPAP Update, The Appraisal Institute North Texas
Chapter, June 2003
Small Hotel/Motel Valuation, the Appraisal Institute Online Continuing Education Program, Chicago,
Illinois, November 2002
Appraisal Procedures, The Appraisal Institute, Daniels College of Business, Denver, Colorado, August,
2002
Techniques of Appraisal Review, The Columbia Institute, Course #108, October 2001
Residential Appraisal Update, The Columbia Institute, course #117, October 2001
Standards of Professional Practice, Part C, The Appraisal Institute, September 2001
GIS and Appraising, The Appraisal Institute, Austin, Texas, August, 1999
FHA Appraisal Rules #119, The Columbia Institute, September 1999
Standards of Professional Practice, Part C, The Appraisal Institute, September 1999
Comprehensive Examination Prep, the Appraisal Institute, February 1998

𝕿𝖊𝖝𝖆𝖘 𝕬𝖕𝖕𝖗𝖆𝖎𝖘𝖊𝖗 𝕷𝖎𝖈𝖊𝖓𝖘𝖎𝖓𝖌 𝖆𝖓𝖉 𝕮𝖊𝖗𝖙𝖎𝖋𝖎𝖈𝖆𝖙𝖎𝖔𝖓 𝕭𝖔𝖆𝖗𝖉
P.O. Box 12188 Austin, Texas 78711-2188
Certified General Real Estate Appraiser

Number:   **TX 1336175 G**
Issued:   **06/03/2014**        Expires:     **06/30/2016**

Appraiser:   **IRENE BECERRA THOMPSON**

Having provided satisfactory evidence of the qualifications required by the
Texas Appraiser Licensing and Certification Act, Texas Occupations Code,
Chapter 1103, is authorized to use this title, Certified General Real Estate
Appraiser.

Douglas E. Oldmixon
Commissioner

QUALIFICATIONS OF THE APPRAISER
IRENE B. THOMPSON

State Licensing and Certification
Licensed and certified by the State of Texas as a General Real Estate Appraiser: License Number
TX-1336175-G (Date of Issue: June 3, 2014; Date of Expiration: June 30, 2016)

Education
Graduate, Weslaco High School, May, 1992

Three years education toward Bachelor of Arts in History and Philosophy, Brown University,
September, 1992 through May, 1995

Continuing Education in Real Estate and Appraising at The Appraisal Institute, Lincoln Graduate
Center, The Columbia Institute, Trinity University, Lon Morris College, and Geo Leonard School of
Real Estate.

Professional Experience
Irene Thompson has been associated with Aguirre & Patterson, Inc. from September, 1998, to the
present. As an independent appraiser, Mrs. Thompson has gained valuable experience appraising
various types of properties throughout the Rio Grande Valley. The following is a list of the types of
properties Mrs. Thompson has appraised: single-family residences, multi-family apartments,
residential condominiums, residential lots, unimproved land tracts, subdivisions, right of ways,
easements, dine-in and fast food restaurants, condominium shell facilities, single-tenant and multi-
tenant retail centers, professional business centers, commercial buildings, convenience stores,
professional offices, medical clinics, assisted living centers, rehabilitation hospitals, banquet halls,
community centers, churches, public schools, charter schools, adult and child day care centers,
office/warehouses, distribution warehouses, manufacturing warehouses, condominium warehouses,
cold storage facilities, cement plants, farms, ranches, motels, hotels, mobile home and RV parks,
unimproved commercial lots, self-service and automatic car washes, government facilities subject to
GSA leases, golf courses, auto service/quick lube auto shops, and leasehold estates.

Recently Completed Course Studies
7-Hour USPAP Update, McKissock, June 2014
Appraisal of Self-Storage Facilities, McKissock, June 2014
Land and Site Valuation, McKissock, May 2014
Environmental Issues for Appraisers, McKissock, May, 2014
Mold, Pollution and The Appraiser, McKissock, May 2014
7-Hour USPAP Update, McKissock, May 2012
Ad Valorem Tax Consultation, McKissock, May 2012
Disclosures & Disclaimers, McKissock, May 2012
How to Analyze and Value Income Properties for Financing, McKissock, May 2012
Private Appraisal Assignments, McKissock, May 2012
Analyzing Operating Expenses, The Appraisal Institute, May 6, 2010
Advanced Internet Search Strategies, The Appraisal Institute, May 5, 2010
Uniform Standards of Professional Appraisal Practice, Update – The Appraisal Institute, February
    22, 2010
FHA Today, No. 114, The Columbia Institute, March 2, 2009
Technology for Today's Appraiser, McKissock, May 30, 2008

QUALIFICATIONS OF THE APPRAISER
IRENE B. THOMPSON (continued)

Survey of the Cost Approach, No. 106, The Columbia Institute, April 8, 2008

FHA, the URAR & the 1025, No. 104, The Columbia Institute, April 7, 2008

Uniform Standards of Professional Appraisal Practice, Update – The Appraisal Institute, May 24, 2007

Uniform Standards of Professional Appraisal Practice (Course USPAP) – Online – Center for Career Education – March 20, 2006

Fundamentals of Real Estate Appraisal – Correspondence – Lon Morris College – February 1, 2006

Appraising Residential Properties – Correspondence - Lon Morris College  - August 18, 2004

Uniform Standards of Professional Appraisal Practice, Update (Course- USPAP 2004) – The Appraisal Institute, February 27, 2004

Industry Update Manufactured Housing – Lincoln Graduate Center, February 24, 2003

New Fannie Mae Appraisal Guide – The Columbia Institute, March 14, 2003

Uniform Standards of Professional Appraisal Practice, Update (Course- USPAP 2002) – The Appraisal Institute, April 27, 2002

Principles and Techniques of Appraisal Review (Course - 108) - The Columbia Institute, June 9, 2001

Farm and Land Appraisal (Course - 637) - National Association of Master Appraisers, Lincoln Graduate Center, April 28, 2001

Income Property Appraisal (Course – 231) – Correspondence – Lon Morris College, February 28, 2000

Uniform Standards of Professional Appraisal Practice (Course – USPAP 99) Correspondence – Trinity University, September 1, 1999

Principles of Real Estate (Course – 111) – Geo Leonard School of Real Estate, August 9, 1998

Real Estate Appraisal (Course – 211) – Geo Leonard School of Real Estate, August 29, 1998

Practice of Real Estate Appraisal (Course – 636) – Lincoln Graduate Center, February 2, 1999

Real Estate Law (Course – 311) – Geo Leonard School of Real Estate, February 20, 1999

C-5149-14-H
389TH DISTRICT COURT, HIDALGO COUNTY, TEXAS

CITATION

THE STATE TEXAS

**NOTICE TO DEFENDANT**: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served this citation and petition, a default judgment may be taken against you.
**TEXAS SECRETARY OF STATE IN TURN BY SERVING**
**CHUBB CORPORATION**
**THE CORPORATION TRUST COMPANY**
**820 BEAR TAVERN RD**
**WEST TRENTON NJ  08628**

You are hereby commanded to appear by filing a written answer to the PLAINTIFF'S SECOND AMENDED ORIGINAL PETITION at or before 10:00 o'clock a.m on the Monday next after the expiration of twenty (20) days after the date of service hereof, before the Honorable 389th District Court of Hidalgo County, Texas at the Courthouse, 100 North Closner, Edinburg, Texas 78539.

Said Petition was filed on the on this the 3RD  day of AUGUST, 2015 and a copy of same accompanies this citation.  The file number and style of said suit being, **C-5149-14-H, PHARR SAN JUAN ALAMO INDEPENDENT SCHOOL DISTRICT VS. TEXAS DESCON, L.P., DESCON 4S, L.L.C., ERO INTERNATIONAL, L.L.P. D/B/A ERO ARCHITECTS,  RIMKUS  CONSULTING  GROUP,  INC,  CHUBB CORPORATION**

Said Petition was filed in said court by Attorney  JESUS RAMIREZ EBONY PARK STE. B 700 NORTH VETERANS BLVD, SAN JUAN , TEXAS 78589 .

The nature of the demand is fully shown by a true and correct copy of the petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

**ISSUED AND GIVEN UNDER MY HAND AND SEAL** of said Court at Edinburg, Texas on this the 24th day of August, 2015.

**LAURA HINOJOSA, DISTRICT CLERK**
**HIDALGO COUNTY, TEXAS**

**PRISCILLA RIVAS DEPUTY CLERK**

**CERTIFIED MAIL  7015-0640-0004-9607-8746**

## CERTIFICATE OF RETURN
## UNDER RULES 103 T.R.C.P.

This is to certify that on this the 24th day of August, 2015 I, Priscilla Rivas, Deputy Clerk of the 389th District Court of Hidalgo County, Texas mailed to the defendant in Cause Number C-5149-14-H, Pharr San Juan Alamo Independent School District  VS.  Texas Descon, L.P., Descon 4S, L.L.C., ERO International, L.L.P. d/b/a ERO Architects, RIMKUS CONSULTING GROUP, INC, CHUBB CORPORATION a copy of the citation along with a copy of the petition by certified mail return receipt requested. Return receipt was returned on the _____ day of _____, 201___ (or unserved for the reason on the certificate return) _____.

**GIVEN UNDER MY HAND AND SEAL OF SAID COURT**, at office in Edinburg, Texas on this the 24th day of August, 2015.

**LAURA HINOJOSA, DISTRICT CLERK**
**HIDALGO COUNTY, TEXAS**

**PRISCILLA RIVAS, DEPUTY CLERK**

### COMPLETE IF YOU ARE PERSON OTHER THAN A SHERIFF,
### CONSTABLE OR CLERK OF THE COURT

In accordance to Rule 107, the officer or authorized person who serves or attempts to serve a citation must sign the return.  If the return is signed by a person other than a sheriff, constable or the clerk of the court, the return must either be verified or be signed under the penalty of perjury.  A return signed under penalty of perjury must contain the statement below in substantially the following form:

"My name is _____, my date of birth is _____ and the address is _____,and I declare under penalty of perjury that the foregoing is true and correct.

**EXECUTED** in _____County, State of Texas, on the _____ day of _____, 20_____.

_____
**Declarant"**

_____
**If Certified by the Supreme Court of Texas**
**Date of Expiration / SCH Number**

CHUBB CORPORATION
THE CORPORATION TRUST COMPANY
820 BEAR TAVERN RD
WEST TRENTON NJ  08628

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Rimkus Consulting Group
4200 Montrose Ste. 480
Houston, TX 77006

C-5149-14-H

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

9590 9403 0337 5155 5335 62

2. Article Number (Transfer from service label)

7015 0640 0004 9607 8739

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____ ☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from Item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053     Domestic Return Receipt

UNITED STATES POSTAL SERVICE

28 AUG '15

PM FILED

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

_____ O'CLOCK _____ M

SEP 0 9 2015

LAURA HINOJOSA  CLERK
District Courts, Hidalgo County

By_____Deputy

Hidalgo County
District Clerk
P.O. Box 87
Edinburg, TX 78540

USPS TRACKING#

9590 9403 0337 5155 5335 62

C-5149-14-H
389TH DISTRICT COURT, HIDALGO COUNTY, TEXAS

## CITATION

### THE STATE TEXAS

**NOTICE TO DEFENDANT**: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served this citation and petition, a default judgment may be taken against you.

**RIMKUS CONSULTING GROUP, INC**
**4200  MONTROSE BLVD**
**STE 480**
**HOUSTON TX  77006**

You are hereby commanded to appear by filing a written answer to the PLAINTIFF'S SECOND AMENDED ORIGINAL PETITION at or before 10:00 o'clock a.m on the Monday next after the expiration of twenty (20) days after the date of service hereof, before the Honorable 389th District Court of Hidalgo County, Texas at the Courthouse, 100 North Closner, Edinburg, Texas 78539.

Said Petition was filed on the on this the 3RD day of AUGUST, 2015 and a copy of same accompanies this citation.  The file number and style of said suit being, **C-5149-14-H, PHARR SAN JUAN ALAMO INDEPENDENT SCHOOL DISTRICT VS. TEXAS DESCON, L.P., DESCON 4S, L.L.C., ERO INTERNATIONAL, L.L.P. D/B/A ERO ARCHITECTS, RIMKUS CONSULTING GROUP, INC, CHUBB CORPORATION**

Said Petition was filed in said court by Attorney JESUS RAMIREZ  EBONY PARK STE. B 700 NORTH VETERANS BLVD SAN JUAN, TEXAS 78589 , .

The nature of the demand is fully shown by a true and correct copy of the petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

**ISSUED AND GIVEN UNDER MY HAND AND SEAL** of said Court at Edinburg, Texas on this the 24th day of August, 2015.

**LAURA HINOJOSA, DISTRICT CLERK**
**HIDALGO COUNTY, TEXAS**

**PRISCILLA RIVAS DEPUTY CLERK**

**CERTIFIED MAIL  7015-0640-0004-9607-8739**

## CERTIFICATE OF RETURN
## UNDER RULES 103 T.R.C.P.

This is to certify that on this the 24th day of August, 2015 I, Priscilla Rivas, Deputy Clerk of the 389th District Court of Hidalgo County, Texas mailed to the defendant in Cause Number C-5149-14-H, Pharr San Juan Alamo Independent School District  VS.  Texas Descon, L.P., Descon 4S, L.L.C., ERO International, L.L.P. d/b/a ERO Architects, RIMKUS  CONSULTING  GROUP,  INC, CHUBB CORPORATION a copy of the citation along with a copy of the petition by certified mail return receipt requested. Return receipt was returned on the _____ day of _____, 201___ (or unserved for the reason on the certificate return) _____.

**GIVEN UNDER MY HAND AND SEAL OF SAID COURT**, at office in Edinburg, Texas on this the 24th day of August, 2015.

**LAURA HINOJOSA, DISTRICT CLERK**
**HIDALGO COUNTY, TEXAS**

**PRISCILLA RIVAS, DEPUTY CLERK**


## COMPLETE IF YOU ARE PERSON OTHER THAN A SHERIFF,
## CONSTABLE OR CLERK OF THE COURT

In accordance to Rule 107, the officer or authorized person who serves or attempts to serve a citation must sign the return.  If the return is signed by a person other than a sheriff, constable or the clerk of the court, the return must either be verified or be signed under the penalty of perjury.  A return signed under penalty of perjury must contain the statement below in substantially the following form:

"My  name  is  _____,  my  date  of  birth  is _____ and the address is _____,and I declare under penalty of perjury that the foregoing is true and correct.

**EXECUTED** in _____County, State of Texas, on the _____ day of _____, 20_____.

_____
**Declarant"**


_____
**If Certified by the Supreme Court of Texas**
**Date of Expiration / SCH Number**

RIMKUS CONSULTING GROUP, INC
4200  MONTROSE BLVD
STE 480
HOUSTON TX  77006

Electronically Filed
8/13/2014 4:51:05 PM
Hidalgo County District Clerks
Reviewed By: Yesica Garza

CAUSE NO. C-5149-14-H

| | | |
|---|---|---|
| PHARR SAN JUAN ALAMO | § | IN THE DISTRICT COURT |
| INDEPENDENT SCHOOL DISTRICT | § | |
| *Plaintiff* | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | HIDALGO COUNTY, TEXAS |
| TEXAS DESCON, L.P., DESCON 4S, | § | |
| L.L.C. and ERO INTERNATIONAL, | § | |
| L.L.P. d/b/a ERO ARCHITECTS | § | |
| *Defendants* | § | 389th JUDICIAL DISTRICT |

---

**PLAINTIFF, PHARR SAN JUAN ALAMO INDEPENDENT SCHOOL DISTRICT'S CERTIFICATE OF WRITTEN DISCOVERY**

---

I certify that on the ___14th___ day of August, 2014, I served the following discovery instruments on opposing counsels of record by via certified mail, return receipt requested, pursuant to the Texas Rules of Civil Procedure:

1. **PLAINTIFF'S RESPONSES TO DEFENDANT'S INTERROGATORIES AND REQUEST FOR PRODUCTION TO PLAINTIFF; and**

2. **PLAINTIFF'S RESPONSES TO REQUEST FOR DISCLOSURE FROM DEFENDANT ERO INTERNATIONAL, LLP, d/b/a ERO ARCHITECTS**

Respectfully submitted,

**THE J. RAMIREZ LAW FIRM**
Attorneys at Law
Ebony Park, Suite B
700 North Veterans Boulevard
San Juan, Texas 78589
Phone: (956) 502-5424
Fax:   (956) 502-5007

By:_____
JESUS RAMIREZ
SBN 16501950
ROBERT SCHELL
SBN 24007992
ATTORNEYS FOR PLAINTIFF
PHARR SAN JUAN ALAMO
INDEPENDENT SCHOOL DISTRICT

---

Electronically Filed
8/13/2014 4:51:05 PM
Hidalgo County District Clerks
Reviewed By: Yesica Garza

## CERTIFICATE OF SERVICE

I, Robert Schell, certify that on the _____14th_____ day of August, 2014, a true and correct copy of the foregoing Plaintiff Pharr San Juan Alamo Independent School District's Certificate of Written Discovery was served via certified U.S. Mail, return receipt requested on the following counsels of record:

*__Via Certified Mail,__*
*__Return Receipt Requested No. 7013 3020 0001 1808 3856__*
*__And Email: dbenjamin@benlawsa.com__*
David P. Benjamin
BENJAMIN, VANA, MARTINEZ & BIGGS, LLP
2161 NW Military Highway, Suite 111
San Antonio, Texas 78213

__Via Certified Mail,__
__Return Receipt Requested No. 7013 3020 0001 1808 3863__
__And Email: sorourke@cbylaw.com__
Stephanie O'Rourke
COKINOS, BOSIEN & YOUNG
10999 IH-10 West, Suite 800
San Antonio, Texas 78230


ROBERT SCHELL

Electronically Filed
8/3/2015 5:41:54 PM
Hidalgo County District Clerks
Reviewed By: Priscilla Rivas

CAUSE NO. C-5149-14-H

| | | |
|---|---|---|
| PHARR SAN JUAN ALAMO | § | IN THE DISTRICT COURT |
| INDEPENDENT SCHOOL DISTRICT | § | |
| *Plaintiff* | § | |
| | § | |
| | § | |
| vs. | § | 389th JUDICIAL DISTRICT |
| | § | |
| TEXAS DESCON, L.P., DESCON 4S, | § | |
| L.L.C. and ERO INTERNATIONAL, | § | |
| L.L.P. d/b/a ERO ARCHITECTS | § | |
| *Defendants* | § | HIDALGO COUNTY, TEXAS |

### PLAINTIFF'S SECOND AMENDED ORIGINAL PETITION

NOW COMES, Pharr San Juan Alamo Independent School District, Plaintiff herein, complaining of Texas Descon, L.P., Descon 4S, L.L.C., ERO International, L.L.P., d/b/a ERO Architects, Frank Lam & Associates, Inc., Rimkus Consulting Group, Inc. and Chubb Corporation, and would show the Court as follows:

### I.

Plaintiff intends to conduct discovery under Level 2 pursuant to Texas Rules of Civil Procedure 190.2.

### II.
### Jurisdiction and Venue

Venue is proper in Hidalgo County, Texas, as all or a substantial part of the acts or omissions giving rise to this cause of action occurred there. Tex. Civ. Prac. & Rem. Code, Section 15.002(a)(1).

This court may properly assert jurisdiction over the non-resident Defendant pursuant to The Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code, Section 17.041, et. seq. The non-resident Defendant has established sufficient minimum contacts with the State of Texas so that

1

Electronically Filed
8/3/2015 5:41:54 PM
Hidalgo County District Clerks
Reviewed By: Priscilla Rivas

this Court may assert personal jurisdiction over Defendant without offending traditional notions of fair play and substantial justice.

## III.
## Parties

Plaintiff is Pharr San Juan Alamo Independent School District, a public independent school district and a political subdivision, duly formed and existing under the laws of the State of Texas, based in Hidalgo County, Texas.

Defendant is Texas Descon, L.P., a business entity with its principal office located in McAllen, Hidalgo County, Texas. This Defendant has already been served in this action.

Defendant is Descon 4S, L.L.C., a business entity with its principal office located in McAllen, Hidalgo County, Texas. This Defendant has already been served in this action.

Defendant is ERO International, L.L.P. d/b/a ERO Architects, a business entity with its principal office located in McAllen, Texas.   This Defendant has already been served in this action.

Defendant is Frank Lam & Associates, Inc., a business entity with its principal office located in Austin, Texas.   It may be served through its registered agent for process, Frank Lam, at 508 W. 16th Street, Austin, Texas 78701.

Defendant is Rimkus Consulting Group, Inc., a business entity with its principal office located in Houston, Texas. It may be served through its registered agent for process, William F. Henri, at 4200 Montrose Boulevard, Suite 480, Houston, Texas 77006.

Defendant Chubb Corporation is a business entity with its principal office located in New Jersey. It may be served by serving its registered agent for process, The Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey, 08628.

2